**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS HOUSTON**
**DIVISION**

United States Courts
Southern District of Texas
F I L E D

JUN 2 6 2025

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| **KISHA PETERS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No: 4:24-cv-00772** |
| | § | |
| **BANNER HEALTH d/b/a BHT** | § | |
| **BANNER HEALTH OF TEXAS** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S REDACTED REPLY IN SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT (ECF 170) IN RESPONSE TO DEFENDANT'S OPPOSITION (ECF 224):**
**Filed Pursuant to (ECF 231); Redacted Version Submitted**

**TO THE HONORABLE COURT:**

**I. INTRODUCTION**

Defendant improperly relies on documents and factual assertions that were never included in its

operative pleading (ECF 60-1)[1]. In seeking leave to amend its defenses, Defendant identified

only two documents as support: ***Banner-00295*** and ***Banner-02170***. See **ECF 60 at p. 2**.

However, neither document substantiates a PHI violation nor supports Defendant's purported

after-acquired evidence defense. These documents do not appear in the body of the amended

pleading (ECF 60-1), nor are they linked to any specific affirmative defense therein.

Accordingly, they fail to meet the evidentiary disclosure and pleading standards under Rules 8

and 26. See **Exhibit A ECF 60 at p. 2;** (Banner-00295) and Exhibit **B** (Banner-02170).

---

[1] Defendant's Amended Answer does not specifically identify the evidence upon which it relies to support its affirmative defenses. See ECF 60-1, (p. 16 ¶ 8) (asserting generalized defenses without citation to supporting documentation).

Both documents are marked "Confidential" and "PHI." However, upon close review, neither contains Protected Health Information as defined under HIPAA or applicable regulations. These designations appear to have been applied reflexively or tactically, without legal or factual foundation. This mislabeling is not harmless — it is materially prejudicial. It implies, without basis, that Plaintiff mishandled sensitive health information — a claim Banner has not and cannot substantiate.

This practice underscores Plaintiff's position that the "after-acquired evidence" defense is not only post hoc and procedurally improper but also unsupported by competent evidence. A particularly egregious example is Banner-02171 (**Exhibit C**), which Defendant also labeled "Confidential PHI." Yet, the unredacted version of the same document (**Exhibit D**) reveals nothing more than generic metadata entries (e.g., "01/19/2020 19:31:00"), with no patient names, treatment codes, or identifiers that could qualify as PHI. There is no breach report filed with OCR, and Plaintiff's system metadata confirms file integrity.

Banner's repeated use of misleading document labels — coupled with the absence of actual evidence of a HIPAA violation — reflects more than negligence; it reflects deliberate litigation misconduct. As recognized in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989), such conduct may constitute **fraud on the court** — a knowing attempt to distort judicial proceedings through fabricated or misleading representations.

Moreover, internal email communications containing PHI were a customary business practice within the Acute Care Coding department and align with the authorization previously granted by Renee Blickenstaff. This further confirms that Plaintiff's conduct was known, permitted, and consistent with department-wide operational norms—not improper or unauthorized.

2

While Defendant produced additional materials during discovery, mere disclosure does not authorize their use at summary judgment absent proper pleading or linkage to an articulated defense. This tactic violates core procedural safeguards embedded in the Federal Rules of Civil Procedure.

Specifically, Defendant's maneuver contravenes **Rules 8, 26, and 37**, as well as the Court's scheduling orders (**ECF 69, ECF 73**), which are designed to ensure claims and defenses are clearly framed and timely disclosed. Furthermore, pursuant to the Court's December 9, 2024 Order (**ECF 73**).[2] The authenticated evidence filed at **ECF 56 and ECF 56-1 through 56-3** is properly before the Court. In line with the Court's directive in ECF 69 discouraging duplicative filings, Plaintiff did not refile these materials electronically. Instead, a courtesy binder—clearly tabbed and labeled—is provided to the Court solely as a practical tool to assist in reviewing evidence already of record. Defendant was also provided with the official PDF versions from the Court's docket. Any late-stage objection to authentication is disingenuous, as Defendant had access to these materials for over six months and raised no objections during discovery. Their challenge now is a tactical mischaracterization, not a legitimate evidentiary dispute.

Accordingly, Plaintiff's Motion for Summary Judgment is supported by competent, authenticated evidence. No genuine dispute of material fact remains. Given the record, Plaintiff respectfully requests that the Court deny any further evidentiary relief or surreply opportunity to Defendant.

## II. LEGAL STANDARD

- **Fed. R. Civ. P. 8(b):** Affirmative defenses must be specifically and clearly stated in the operative answer. Defendant's amended answer (ECF 60-1) fails to plead any factual

basis or identify supporting evidence for the defenses now asserted at summary
judgment. Courts routinely reject attempts to rely on unpled defenses at this stage.

- **Fed. R. Civ. P. 26(a), (e):** Parties are required to timely disclose all evidence they intend
  to use in support of a claim or defense. Banner's reliance on documents not linked to any
  stated defense violates these disclosure requirements.

- **Fed. R. Civ. P. 37(c)(1):** Failure to comply with disclosure obligations results in
  automatic exclusion of the evidence—unless the noncompliance was substantially
  justified or harmless, which Banner has not shown. The rule is designed to prevent trial
  by ambush and ensure fairness.

- **Rule 56(c)(2):** Summary judgment evidence must be admissible. Plaintiff objects to each
  declarant's affidavit and exhibit that lacks foundation, authentication, or contains
  inadmissible hearsay and speculation.

- **Controlling Case Law:** Courts consistently strike unpled defenses and related evidence
  at summary judgment. These Fifth Circuit and Northern District of Texas decisions
  support your procedural and evidentiary arguments:

    - *Elgaghil v. Tarrant Cnty. Jr. Coll.*, 45 F. Supp. 2d 519, 523–24 (N.D. Tex. 1999)
      (granting motion to strike affirmative defenses first raised at summary
      judgment).[3]

---

[2] Plaintiff is expressly permitted to incorporate previously stricken materials in support of summary judgment, so long as they comply with the requirements outlined in ECF 69 — which Plaintiff has fully satisfied.

[3] https://www.govinfo.gov/content/pkg/USCOURTS-txnd-3_04-cv-02278/pdf/USCOURTS-txnd-3_04-cv-02278-0.pdf?utm_source=chatgpt.com

4

- *GE Capital Commercial, Inc. v. Wright & Wright, Inc.*, No. 3:09-CV-572-L, 2011 (N.D. Tex. Oct. 20, 2011) (court excluded defense not disclosed until summary judgment stage).[4]

- *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").[5]

**Legal Consequence:**

Because Defendant failed to plead these defenses and failed to disclose the related evidence in a timely or specific manner, the Federal Rules and binding case law require exclusion of such materials from consideration. Defendant cannot now rely on procedurally improper defenses or evidentiary submissions to oppose summary judgment.

## III. STATEMENT OF FACTS: DECLARATIONS FAIL TO CREATE A GENUINE DISPUTE

### A. All Declarants Use Identical, Boilerplate Language

Each of Banner's declarants opens with the same prefatory formula:

"I have personal knowledge of the matters stated herein, and the following statements are made to the best of my knowledge, information, and belief."

This phrasing fails to satisfy **Federal Rule of Civil Procedure 56(c)(4)**, which requires declarations to be based on **personal knowledge** and limited to facts that would be **admissible in evidence**. Courts routinely reject affidavits qualified by "**information and belief**" as insufficient to create a genuine dispute. See *Pace v. Capobianco*, 283 F.3d 1275, 1278–79 (11th

---

[4] https://law.justia.com/cases/federal/district-courts/texas/txndce/3:2009cv00572/185226/287/
[5] https://law.justia.com/cases/federal/appellate-courts/F3/429/108/494668/

Cir. 2002)[6] (disregarding affidavit made on "information and belief" at summary judgment).

**B. The Declarations Lack Evidentiary Foundation**

- **No Basis Under FRE 602:** The declarants do not establish how they have personal knowledge of the facts they assert. Assertions based on secondhand accounts, conclusions, or speculation are inadmissible.

- **Improper Use of Documents (FRE 901, 803(6)):** Though Banner attaches internal documents, it provides no **custodian-of-records affidavit**, nor any foundation to admit the materials as business records. The absence of authentication renders these exhibits inadmissible under **FRE 901** and **803(6)**.

- **Declarations Introduce Unpled Theories:** Many of the documents referenced—such as those concerning alleged policy violations or "after-acquired" evidence—do not appear in Banner's operative answer (ECF 60-1). These cannot be used to support new factual or legal theories at summary judgment.

- **Declarations are Procedurally Defective:** Testimony made on "information and belief" does not qualify as competent evidence at the summary judgment stage and must be excluded. See *Pace*, 283 F.3d at 1278–79.

**C. Declarations are Impeached by Prior Inconsistent Statements**

Even if admissibility defects were cured, each declaration contains or relies on factual assertions that are **directly contradicted by authenticated evidence** in the record, including prior statements made by the same witnesses. These contradictions form a basis for impeachment under **Federal Rule of Evidence 613(b)**, further undermining the reliability of Banner's summary judgment record.

---

[6] https://case-law.vlex.com/vid/pace-v-capobianco-no-895584877

## IV. CONTRADICTORY PRIOR STATEMENTS — GROUNDS FOR IMPEACHMENT

### A. All Defense Declarations Fail Under Rule 56(c)(4)[7]

Banner relies on multiple declarations to support its motion for summary judgment, but each fails to satisfy the evidentiary standards of **Federal Rule of Civil Procedure 56(c)(4)**. Most notably, Banner's litigation agent, **Renee Blickenstaff**, submitted a declaration that is both **contradictory and legally insufficient**. She claims she "**may have approved**" of Plaintiff sending work emails to her personal account, yet in the same paragraph, she denies ever giving permission. This internal inconsistency renders her testimony unreliable. Additionally, while she asserts "personal knowledge," her declaration is expressly qualified as being made "to the best of my knowledge, information, and belief"—a standard that fails to meet the Rule 56(c)(4) requirement. **Blickenstaff's** testimony is both **conflicting and legally defective** to support the defendant's Summary Judgment. Courts uniformly reject such declarations as **incompetent summary judgment evidence** because they do not reflect first-hand knowledge of admissible facts. Accordingly, Plaintiff moves to exclude each of these declarations under:

- **FRE 901** (lack of authentication), **FRE 803(6)** (absence of business records foundation), and **FRCP 56(c)(2)** (inadmissibility at summary judgment).

Even if the declarations survived exclusion under Rule 56(c)(4), they are independently impeachable based on prior inconsistent statements and authenticated documentation demonstrating factual unreliability. Moreover, none of the declarations or exhibits are linked to specific defenses pleaded in Defendant's operative Answer (ECF 60-1), rendering them procedurally improper under **Rules 8 and 26**.

---

[7] To avoid unnecessary **repetition**, Plaintiff highlights common legal defects in Section IV(B) and presents witness-specific contradictions in Exhibits E–O.

## B. Grounds for Impeachment — Supported by Authenticated Evidence

Each declarant is further impeached by **contradictory prior statements** and verified records evidence that refutes key factual claims. These contradictions are documented in the following:

- *Exhibit E*: Impeachment of Fagin Declaration
- *Exhibit F*: Impeachment of Blickenstaff's Declaration[8]
- *Exhibit G*: Impeachment of Garber's Declaration
- *Exhibit H*: Impeachment of Lukin's Declaration
- *Exhibit I*: Impeachment of Myrick's Declaration
- *Exhibit J*: Impeachment of Gleason's Declaration
- *Exhibit K*: Impeachment of Gilliam's Declaration
- *Exhibit L*: Impeachment of Small's Declaration
- *Exhibit M*: Impeachment of Bowers's Declaration
- *Exhibit N*: Impeachment of Hall's Declaration
- *Exhibit O*: Impeachment of Shank's Declaration

These exhibits **include** authenticated proof—like internal emails, confirmed discovery answers, and inconsistent sworn statements—that expose contradictions in Banner's witnesses' testimony, and support their disqualification under **Rule 613(b).**

## V. ARGUMENT

## A. Defendant Disclosed Evidence but Did not Plead It

The Amended Answer **(Exhibit P, ECF 60-1, p. 15 ¶ 8)** includes only a vague reference to conduct "**learned of during discovery**," without identifying specific documents or articulating a

---

[8] See also **Exhibit T (Affidavit of Truth)**, confirming that PHI-related work emails were customary, known, and never treated as policy violations during Plaintiff's tenure.

8

clear factual basis for any alleged policy violation, which is demonstrably false.[9] Because these documents were never incorporated into the operative pleading, Banner cannot now rely on them to support an "after-acquired evidence" defense or to assert a policy breach at the summary judgment stage. To now claim that such conduct was "learned of" only in August 2024 is not only inaccurate—it reflects a deliberate effort to **mislead the Court** and revive a defense Banner failed to timely plead. Courts consistently exclude such evidence when used to support unpled defenses. *See Elgaghil v. Tarrant Cnty. Jr. Coll.*, 45 F. Supp. 2d 519, 523–24 (N.D. Tex. 1999) (granting motion to strike defenses raised for the first time at summary judgment).

## B. Failure to Seek Timely Leave to Supplement Pleading

After amending its answer on **December 6, 2024 (ECF 60-1)**, Banner never sought leave to supplement its pleading or expand the scope of the after-acquired defense. Under **Rule 16(b)**, once the Court has issued a scheduling order, a party may modify pleadings only upon a showing of **"good cause."** No such showing has been made.

Despite its awareness of Banner-00295 and 02170 by August 2024, Banner did not move to further amend or clarify its pleading before dispositive motion deadlines. Its failure to timely seek an amendment renders its attempt to use this evidence procedurally improper.

## C. Improper Use of Evidence at Summary Judgment

Summary judgment is not a trial run for new legal theories or undeveloped defenses. See *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). The purpose of Rule 8 is to provide notice of the factual and legal bases of the defense, enabling the opposing party to prepare a response and conduct appropriate discovery.

---

[9] Banner's own litigation representative, Renee Blickenstaff was aware—**as early as 2017**—that Plaintiff may have directed her to send work emails to Plaintiff's personal account.

Here, Plaintiff was denied that opportunity. Because Banner failed to plead its theory regarding

Banner-00295 and 02170 or provide timely notice of how it would rely on them, Plaintiff was

unfairly prejudiced. This alone warrants exclusion under **Rule 37(c)(1)** and **Rule 56(c)(2)**.

## VI. FRAUD ON THE COURT – FALSE REPRESENTATIONS ABOUT ACCESS

Defendant's reliance on Shank's declaration and investigation to support its "after-acquired

evidence" defense amounts to intentional misrepresentation of material facts—fraud on the

Court. Banner alleges that Plaintiff accessed PHI without authorization, but this assertion is

factually false and knowingly contradicted by Defendant's own practices and system controls.

*See Exhibit Q.*[10]

### A. Shank's Report Misrepresents Access Authority

Shank's investigation claims that Plaintiff engaged in "**unauthorized access**, acquisition,

viewing, use, or disclosure of PHI pursuant to HIPAA." However, the account at issue was a

shared departmental resource—accessible to all leadership personnel in the Coding Department.

As Associate Coding Director, Plaintiff had role-based access, which internal records confirm

was standard practice and not misconduct.

Moreover, Shank's own report characterizes the alleged incident as a **Category 2 violation:**

"**Negligence/Willful Disregard Causing Privacy or Information Security Violation without**

personally motivated intentions**." See **ECF 56-3, (Exhibit B-22) at p. 85** (Banner Sanctions

Policy, Category 2 definition). Under Banner's own policy, Category 2 violations do **not** warrant

termination but typically result in a **written corrective action**. See **ECF 56-3 (Exhibit B-22) at**

**p. 90**. Accordingly, the classification of Plaintiff's conduct as grounds for termination is not only

---

[10] Banner-**04393-04394**, Investigation Report (Determination of Violation and Privacy Violation).

inconsistent with internal access protocols but also directly contradicts Banner's own disciplinary framework.

- Because Banner classified the alleged violation as a Category 2 offense, its claim cannot support the after-acquired evidence defense under *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995)[11].

## B. Contradiction by Renee Blickenstaff's Own Statement and Shank's Investigation

Renee Blickenstaff, a Banner leader, admitted she *"may have approved"* Plaintiff's use of a personal email account for work. This directly conflicts with Shank's assertion that the access was unauthorized. The inconsistency is not a mere factual disagreement—it's a deliberate post-hoc attempt to recast authorized behavior as illicit.

## C. Legal Basis for Fraud on the Court

Deliberately presenting false evidence or inconsistent testimony—especially to justify litigation conduct—constitutes fraud on the court. See *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)[12]; *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).[13] Banner's failure to disclose its standard access procedures, combined with later assertions that the same access was unauthorized, is a calculated attempt to mislead the Court; such conduct may constitute **fraud on the court**.

## D. After-Acquired Evidence Theory Collapses Under Admission

Blickenstaff's admission that she "may have approved" Plaintiff's action, along with Banner's recognition that PHI access was part of Plaintiff's core job duties, fatally undermines its theory of wrongful access. **Because she was fully aware that work emails in the Acute Care Coding**

---

[11] https://supreme.justia.com/cases/federal/us/513/352/
[12] https://www.casemine.com/judgement/us/5914c56fadd7b049347d41c6

**department routinely included PHI, her admission necessarily includes approval of PHI transmission as part of Plaintiff's job function.** It was well known that work emails routinely contained PHI as part of the coding department's daily functions. The specific documents cited by Banner—Banner-00295 and Banner-02170—are neither policy violations nor do they contain protected health information. These are routine, educational communications that are captured during the usual job functions. Banner cannot now disavow that practice or claim it was a policy violation when it was institutionally accepted, known, and authorized.

### E. Procedural and Legal Consequences

This is not an evidentiary dispute; it's a pattern of misconduct aimed at manufacturing a justifiable termination after judicial scrutiny began. Such blatant bad faith disrupts judicial integrity, requiring the Court to: **Reject** Banner's "after-acquired" defense outright; **Exclude** any related testimony or evidence under Rule 37(c)(1) and Rule 56(c); **Impose appropriate sanctions** under the Court's inherent power and Rule 11.

The Court has inherent authority to sanction such conduct when a party's actions "corrupt the judicial process" and involve deception aimed at securing a favorable ruling. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). Plaintiff respectfully submits that these coordinated misrepresentations — made under oath, in strategic sequence, and in contradiction of Banner's internal structure — threaten the integrity of these proceedings and warrant judicial scrutiny under the **fraud-on-the-court doctrine.**

- This contradiction demonstrates that Banner's decision was not based on **objective policy enforcement**, but on **after-the-fact rationalization** grounded in speculation — **"may have," "possibly," "I didn't know"** — rather than clear policy violation.

---

[13] https://supreme.justia.com/cases/federal/us/322/238/

- Banner's use of after-acquired evidence here reflects both a **failure of internal investigation** and a **misuse of disciplinary escalation** to justify a pretextual termination. Such contradictions are precisely what preclude summary judgment and expose underlying retaliation, as prohibited under **Title VII, ADA, and 42 U.S.C. § 1981**.

## VII. EVEN IF PERMITTED, BANNER'S EXPANSION OF ITS DEFENSE IS PROCEDURALLY ABUSIVE, LEGALLY DEFECTIVE, AND MISLEADING

Even if the Court were to entertain any further expansion of Banner's "after-acquired evidence" theory beyond the scope of its operative Answer (ECF 60-1), such expansion would constitute undue delay, procedural abuse, and bad faith gamesmanship. Banner has already demonstrated the **unreliability of its timeline and its pattern of corporate misconduct**, as well as its repeated mischaracterization of internal documents and Plaintiff's job-related responsibilities. See **Exhibit R – Fabricated Timeline and Corporate Misconduct Summary**.

### A. Undue Delay and Tactical Gamesmanship

Banner had ample opportunity during discovery and multiple chances during pleadings to assert the documents it now attempts to weaponize. Instead, it delayed until Plaintiff exposed fatal defects in its original filings, at which point it pivoted to new theories. Courts have consistently held that summary judgment is not the venue to revise or supplement deficient pleadings. See *Cutrera v. Bd. of Supervisors of LSU*, 429 F.3d 108, 113 (5th Cir. 2005)[14].

> "Defendant had ample opportunity to disclose and plead these documents but chose not to. Now, only after its previously cited evidence has been discredited, Defendant seeks to change its defense midstream to escape the consequences of its misrepresentation."

---

[14] ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

## B. Prejudice to Plaintiff

Plaintiff relied in good faith on the boundaries of Banner's operative pleading (ECF 60-1) and its formal discovery disclosures in structuring her opposition, evidentiary rebuttals, and damages theory. Banner is now attempting to rely on **unpleaded evidence** to support an after-acquired evidence defense it never formally asserted or disclosed in discovery. This tactic results in significant and undue prejudice to Plaintiff.

- Plaintiff could not reasonably anticipate declarations or exhibits unanchored to any pleaded defense.
- Banner's vague reference to "**conduct learned during discovery**" failed to identify any specific facts or documents, and no amended pleading or Rule 26(e) supplement was filed.
- Permitting late-stage reliance on this undeveloped defense violates the basic tenets of procedural fairness and undermines the Court's scheduling directives.

**Specifically, Banner's conduct:**

- Forces Plaintiff to respond to undisclosed allegations without adequate notice;
- Violates the disclosure requirements of **Rule 26(a)** and **Rule 26(e)**;
- Triggers **Rule 37(c)(1)**, which bars use of untimely or undisclosed material absent substantial justification or harmlessness;
- Contravenes this Court's **Scheduling Orders (ECF 69 and 73)**, which required full disclosure of legal theories and factual bases prior to dispositive motion practice.

This is precisely the type of **litigation-by-surprise** that **Rule 16(b)**, **Rule 26(e)**, and **Rule 37(c)(1)** are designed to prevent. Allowing Banner to reverse-engineer its defense strategy at the

summary judgment stage—after Plaintiff has already submitted briefing—would defeat the core

principles of notice, fairness, and judicial economy.

## C. Futility and Legal Insufficiency

Even if considered, the documents Banner highlights—**Banner-00295 and Banner-02170**—are

plainly **work-related emails** exchanged in the normal course of Plaintiff's duties. They contain

no PHI, document no policy violation, and reflect routine oversight consistent with Plaintiff's

role as Associate Coding Director. These communications cannot support an after-acquired

evidence defense under any standard and are legally and factually insufficient to justify summary

judgment.

## D. Bad Faith and Misuse of Confidential Designations

The record shows a troubling pattern of Banner labeling standard internal communications and

access logs as "Confidential" or "PHI" to falsely imply wrongdoing. This deliberate misuse of

protective designations distorts the evidentiary record and unfairly prejudices Plaintiff.

This type of **litigation distortion** is not only sanctionable but squarely within the scope of *fraud*

*on the court*. Such conduct is not merely negligent — it approaches fraud on the court. Banner's

attempt to manufacture the appearance of HIPAA violations through mislabeling fits the model

of bad-faith litigation condemned in both precedent and ethics. The Court should bar any further

reliance on any related documents, and reject Defendant's attempt to backfill its case through

misdirection and delay.

## VIII. ADA Retaliation and Failure to Accommodate — Implied Under Rule 8

While Plaintiff's original pleading does not expressly cite the Americans with Disabilities Act

("ADA") by name, the facts supporting an ADA-based claim are plainly laid out in the record.

Under Federal Rule of Civil Procedure 8(a) and binding Fifth Circuit precedent, a plaintiff need

not invoke a statute explicitly if the facts alleged support the legal theory. See *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim may be based on facts alleged in the complaint, even if the legal theory was not specifically identified.").

Here, Plaintiff has:

- **Actual Notice:** Disclosed a documented mental health condition, including ███████ ████████████████████, and ongoing emotional deterioration;

- **Knowledgeable Employer**: Notified supervisory personnel, including Jami Woenkenberg, on **June 29, 2022**, of this condition—placing Banner on **actual notice** of a disability;

- **Lack of Accommodation**: Received no support, outreach, or reasonable accommodation from Banner between **June 29 and August 22, 2022**, despite continued deterioration;

- **Retaliation**: Following Plaintiff's protected activity (recording meetings, filing discrimination complaints), she was excluded, retaliated against, and targeted for termination.

- Been forced to take **FMLA leave** due to the lack of support and worsening health;

- Been subjected instead to **disciplinary escalation**, **retaliatory isolation**, and post-termination litigation efforts aimed at framing her condition as a liability rather than a protected status under federal law.

Banner's focus during this time remained on the alleged PHI recordings—none of which were ever formally processed, investigated by compliance, or substantiated. These false justifications not only reveal pretext but highlight a willful disregard of Plaintiff's federal rights. Banner's failure to respond or accommodate, in the face of clear ADA triggers, supports both an **ADA**

**retaliation claim** under 42 U.S.C. § 12203 and a **failure-to-accommodate claim**[15] under § 12112(b)(5)(A) and 29 C.F.R. § 1630.2(o)(3) (interactive process requirement).

The record includes authenticated medical documentation filed at **ECF 58**, verifying Plaintiff's diagnosis and related symptoms as early as November 2024. These records were known to Banner and available well before it filed its Motion for Summary Judgment.

Pursuant to *Kolstad v. ADA*, 527 U.S. 526 (1999), and *Patterson v. P.H.P. Healthcare*, 90 F.3d 927 (5th Cir. 1996)[16], Plaintiff may seek both **emotional distress** and **punitive damages** for ADA violations involving **reckless disregard** or **intentional indifference**. Defendant's failure to act after being notified of Plaintiff's condition directly contributed to her ongoing need for treatment and emotional harm, for which she now seeks full relief.

## IX. Actual Notice — Banner Was Properly Informed of Plaintiff's Disability (Mental Health Crisis)

Banner Health had *actual knowledge* of Plaintiff's mental health condition, including ██████ ███, long before her termination. This is not speculative — it is confirmed in the record. In addition to the judicial admissions found in *See* **Exhibit S** - ECF 26 (Answer ¶¶ 72, 136, 139), Plaintiff's **authenticated rebuttal statement**—filed as **(ECF 56-3 Exhibit B-10 p. 47, Bullet 4)** explicitly discloses ████████ and racial discrimination. In her own words:

"I think of ████ every day because of the racial discrimination I've encountered at the hands of Ms. Fagin..."

---

[15] To establish ADA retaliation, a plaintiff must show: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal connection. (*Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)). For failure to accommodate, the employer must have known of the disability and failed to engage in the interactive process.

[16] https://www.casemine.com/judgement/us/5914bcaeadd7b0493479dfb0/amp

Defendant admitted receipt **(undisputed notice)** of this document in its Answer (**Exhibit S**), conceding that Plaintiff's mental health crisis—including explicit ████████████—by **June 29, 2022**, rebuttal but was submitted not only to Banner HR, but also to the **EEOC (ECF 56-2, Exhibit A- 3 p. 57, Bullet 4)** and Plaintiff's then-counsel, **Kalandra Nicole Wheeler of Wiley Wheeler, P.C.** These actions put Banner on repeated and documented notice of Plaintiff's ADA-qualifying mental health crisis and the racial hostility she experienced. Yet, Banner:

- **Offered no accommodation or support** under the ADA;

- **Took no action to mitigate harm** or assess Plaintiff's fitness for duty; and

- **Escalated discipline** without conducting any psychological evaluation or HR-led wellness review.

- **Failure to Act Despite Acknowledged Hostile Environment**

Despite being placed on actual notice of Plaintiff's deteriorating mental health and escalating emotional harm, Banner took no remedial action to assess her fitness for duty or mitigate her exposure to harm. Instead, in an **authenticated April 6, 2022** recording (**ECF 56-3, Exhibit B p. 8, ¶ 53**),[17] HR representative Jo-Marie Garber expressly acknowledged that Ms. Peters would "continue reporting to Ms. Fagin" — thereby affirming the company's decision to leave Plaintiff under the supervision of the very manager accused of ongoing discriminatory and hostile conduct.

This recorded statement — made after HR was fully aware of Plaintiff's complaints of discrimination, emotional breakdown, resulting ████████████ — constitutes **deliberate indifference** and **institutional ratification** of a hostile work environment. It supports both the ADA claim for failure to accommodate and a Title VII retaliation theory for knowingly

18

sustaining harmful conditions after protected activity, demonstrating willful and intentional malice by the Defendant.

Under well-established ADA law, this failure triggers liability for both **failures to accommodate** and **retaliation**, especially when coupled with termination during a known period of disability, and termination during a known period of FMLA leave underscores the seriousness of the missed accommodations. Such omissions not only **violate the ADA's duty to engage in the interactive process**, but also establish reckless disregard for Plaintiff's federally protected rights—entitling her to emotional distress and, potentially, punitive damages under *Kolstad v. ADA*, 527 U.S. 526 (1999). **Respectfully, the Court should find that the ADA claim is properly implied and supported**, and that associated damages (emotional distress, punitive, front pay) are warranted.

## X. Banner's Termination Decision Was Based on Speculation, Not Policy

Banner's stated justification for terminating Plaintiff was not based on any identifiable policy violation or properly documented infraction. Instead, the termination relied on speculative assumptions, uninvestigated complaints, and subjective interpretations—often contradicted by the organization's own internal records. **See Exhibit U – Authenticated Exhibits A through T**. The evidentiary record—comprising sworn declarations, court filings, and internal Banner documents—demonstrates the following:

- **No Formal Investigations**: Banner failed to conduct formal HR investigations into multiple key complaints, directly contradicting its own internal procedures.

- **Lack of Policy-Based Discipline**: The corrective action taken against Plaintiff lacked foundation in any specific written rule. Instead, it relied on leadership's subjective

---

[17] See ECF 57 USB drive on file with the Clerk's Office (re: ECF 56) for active recording links

interpretations and vague expectations—for example, allegedly addressing a colleague by their first name.

- **Debunked PHI Claims**: Banner's own privacy assessments confirm that no Protected Health Information (PHI) was ever recorded. Nonetheless, it continued to cite this claim as a disciplinary rationale, despite having no evidence to support it.

- **Discredited Allegations Ignored**: Internal communications show that allegations made by Donita were discredited by Rhonda Myrick before the termination decision. Banner nevertheless failed to correct the record or reevaluate its position.

- **Speculative Language Undermines Credibility**: The decision-making rationale relies heavily on uncertain language such as **"felt," "maybe," "believed," and "possibly assumed."** These vague, speculative assertions appear repeatedly in Banner's own declarations, underscoring the absence of a verified, policy-based justification for Plaintiff's termination.

## XI. Banner's Disciplinary Actions Were Driven by Pretext, Not Policy

What Banner characterizes as discipline is, in truth, discrimination and retaliation—thinly veiled under the guise of policy enforcement. The record reflects that Banner's actions violate Title VII, Section 1981, the ADA, and foundational principles of procedural fairness and due process. Banner's misuse of informal and inconsistent disciplinary practices is part of an institutional pattern—not a one-time error. In *Banner Health System v. NLRB*, 867 F.3d 1051, 1054 (D.C. Cir. 2017), the D.C. Circuit observed:

> **"Banner's internal practices appeared to rely on undocumented procedures, and that employees were often not aware of policies they were expected to follow."**

20

That judicial critique mirrors the circumstances here. Plaintiff was not disciplined for violating a clear, written policy. Instead, she was subjected to disciplinary action based on vague, unwritten expectations—applied inconsistently and retroactively to justify a predetermined outcome. Supporting examples from the record include:

- **Tabitha Fagin's Admission**: "Everything doesn't have to be written." This reflects an institutional culture that permits subjective enforcement and undermines the legitimacy of any claimed policy violation (see **ECF 56-3, Exhibit B, p. 8, ¶ 50**).

- **Renee Blickenstaff's Concession**: Acknowledges providing vague verbal instructions without documenting boundaries—confirming that Plaintiff's actions were aligned with leadership norms, not in violation of clear policy.

There is no evidence in the record of a legitimate, nondiscriminatory rationale for Plaintiff's termination. Instead, there is overwhelming documentation of pretextual justifications, selectively applied disciplinary measures, and a coordinated strategy to shield Banner from liability post hoc. The only actionable violations demonstrated on this record are those committed by Banner Health and its agents.

## XX. Institutional Pattern of Misconduct — Malice, Fraud, and Retaliation

Banner Health's conduct in this litigation is not an isolated misstep — it is part of a deeply rooted institutional pattern of regulatory violations, litigation abuse, and retaliatory behavior. The public record and Plaintiff's evidence establish that Banner operates with systemic disregard for compliance, employee rights, and judicial integrity.

### A. Documented History of Regulatory and Legal Violations[18]

Banner's history speaks for itself:

- **Privacy & HIPAA Violations:**
    - *2020*: Private litigation settlement — $6 million; *2021*: HHS OCR enforcement action — $200,000; and *2023*: HHS OCR settlement — $1.25 million
- **False Claims Act Violations:**
    - *2004*: DOJ settlement — $6.1 million; *2015*: DOJ/USAO settlement — $6 million + $2.68 million; and *2018*: DOJ Civil Division — $18 million settlement
- **Employment Discrimination & Retaliation:**
    - *2012*: EEOC resolution — $255,000 for systemic bias; *2012*: OFCCP fine — $10,767 for discriminatory hiring practices
- **Consumer Protection & Data Breaches:**
    - *2003*: North Dakota AG Consent Order — $1 million penalty

This record is not merely checkered — it is damning. It reflects a corporate culture where accountability is avoided, retaliation is institutionalized, and legal obligations are treated as tactical obstacles rather than binding responsibilities.

## B. Application to the Present Case

The same patterns appear here:

- **Pretextual Discipline:** Disciplinary measures not grounded in written policy, but based on emotion, speculation, and discriminatory assumptions.
- **Discriminatory Animus:** Documented racial bias, ADA noncompliance, and targeting of Plaintiff following protected conduct.
- **Retaliation:** Accelerated discipline and termination following EEOC complaints, FMLA leave, and whistleblowing.

---

[18] https://violationtracker.goodjobsfirst.org/?parent=banner-health&order=company&sort=

- **Fraud on the Court**: Fabricated HIPAA claims, false "PHI" designations, and misrepresented access authority — all contradicted by Banner's own records.

- **Intentional Infliction of Emotional Distress**: Institutional disregard for Plaintiff's documented mental health crisis, even after receiving direct notice of suicidal ideation.

Banner's misconduct is not a procedural error or inadvertent omission — it is calculated litigation abuse aimed at avoiding liability through misrepresentation, intimidation, and procedural manipulation.

## XXX. Conclusion and Relief Requested

Plaintiff respectfully requests that the Court for the reasons set forth above — and supported by authenticated, undisputed evidence of record — Plaintiff respectfully requests that this Court: **GRANT** Plaintiff's Motion for Summary Judgment as to liability on all claims under:

- **Title VII** (42 U.S.C. § 2000e et seq.); **42 U.S.C. § 1981**;

- **The Americans with Disabilities Act (ADA)** (42 U.S.C. § 12101 et seq.);

For discrimination, retaliation, wrongful termination, failure to accommodate, and maintenance of a hostile work environment—carried out with intentional malice, reckless indifference, and willful disregard for Plaintiff's federally protected rights

## Findings Requested:

1. That no genuine issue of material fact remains regarding:

   - The falsity of Defendant's HIPAA-related allegations;

   - The fabricated and post hoc nature of the "after-acquired evidence" theory;

   - Banner's failure to adhere to its internal policies or the ADA-required interactive process;

23

- The direct causal connection between Plaintiff's protected activities and subsequent adverse employment actions.

2. That Defendant's summary judgment evidence is both procedurally and substantively defective, and the Court should:

   - **Exclude** Banner-00295 and Banner-02170 as inadmissible and improperly labeled; **Disregard** all declarations and documents not properly linked to Defendant's operative Answer (ECF 60-1);

   - **Strike** any material not meeting the authentication and admissibility standards under **Federal Rule of Civil Procedure 56** and the **Federal Rules of Evidence**.

3. If leave to file a surreply is granted, it should be limited to addressing arguments raised in Plaintiff's Reply, filed within seven (7) days of the Court's order, and may not introduce new evidence or unpled legal theories and Plaintiff respectfully requests the right to file a reply within seven (7) days of any surreply submitted by Defendant.

**Relief Requested:**

4. **Enter judgment in Plaintiff's favor**, awarding:

   - Compensatory damages for emotional distress, reputational damage, and lost professional opportunities;

   - Punitive damages based on Defendant's reckless disregard and intentional misconduct.

5. **In the alternative**, if full summary judgment is not granted:

   - **Deny** Defendant's Motion for Summary Judgment **with prejudice**;

   - Set this matter for a **jury trial** on all remaining factual issues and damages;

24

- Or convene a **limited hearing** solely on damages and equitable relief.

6. **Order equitable relief**, including:

   - Expungement of Plaintiff's disciplinary record;

   - Injunctive relief preventing future reliance on falsified or discredited materials.

7. **Impose sanctions** under **Fed. R. Civ. P. 11** and/or **28 U.S.C. § 1927**, for Defendant's procedural misconduct, misrepresentations, and fraud upon the Court.

8. **Retain jurisdiction** to oversee enforcement of all relief awarded.

**Damages Preservation and Disclosure**

Plaintiff has prepared a comprehensive Damages and Employability Impact Statement in accordance with Federal Rule of Civil Procedure 26(a)(1)(A)(iii), which will be served consistent with the Court's scheduling order by June 27, 2025. This statement supports Plaintiff's claims for back pay, front pay, emotional distress, and punitive damages, and is tailored to reflect the full extent of harm suffered. Plaintiff expressly reserves the right to seek all available legal and equitable remedies as warranted by the record and the severity of Defendant's misconduct.

**June 26, 2025**

**Respectfully submitted,**

 **/s/ Kisha Peters**
Kisha Peters
*Plaintiff Pro Se*
2927 Westwood Manor Lane,
Houston, Texas 77047
Kipeters1107@yahoo.com
Telephone: 832-782-0199

## CERTIFICATE OF SERVICE

I hereby certify that on **June 26, 2025**, I served a true and correct copy of Plaintiff's Redacted

Reply in Support of Motion for Summary Judgment (ECF 170) In Response to Defendant's

Opposition (ECF 224)

on Defendant's counsel via:

- **U.S. Certified Mail with Tracking**,

in accordance with Federal Rule of Civil Procedure **5(b)(2)(C)**.

Additionally, Defendant's counsel receives electronic notice through the **CM/ECF system**,

which provides an official filed copy upon docket entry.


**Shira R. Yoshor** (Lead Attorney of Record)
Email: yoshors@gtlaw.com
**Andrew Fox** (Pro Hac Vice Attorney)
Email: afox@cblawyers.com
**Jill Chasson** (Pro Hac Vice Attorney)
Email: jchasson@cblawyers.com


**Respectfully submitted,**

*/s/ Kisha Peters*
Kisha Peters
*Plaintiff Pro Se*
2927 Westwood Manor Lane
Houston, Texas 77047
Kipeters1107@yahoo.com
Telephone: 832-782-0199

26

## TABLE OF AUTHORITIES

**Cases**

- *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989)
- *Banner Health System v. NLRB*, 867 F.3d 1051 (D.C. Cir. 2017)
- *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)
- *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108 (5th Cir. 2005)
- *Elgaghil v. Tarrant Cnty. Jr. Coll.*, 45 F. Supp. 2d 519 (N.D. Tex. 1999)
- *GE Capital Commercial, Inc. v. Wright & Wright, Inc.*, No. 3:09-CV-572-L, 2011 (N.D. Tex. Oct. 20, 2011)
- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)
- *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999)
- *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995)
- *Pace v. Capobianco*, 283 F.3d 1275 (11th Cir. 2002)
- *Patterson v. P.H.P. Healthcare*, 90 F.3d 927 (5th Cir. 1996)
- *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978)
- *Seaman v. CSPH, Inc.*, 179 F.3d 297 (5th Cir. 1999)

**Statutes**

- Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.
- 42 U.S.C. § 1981
- Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.
- ADA Retaliation Provision, 42 U.S.C. § 12203
- ADA Accommodation Provision, 42 U.S.C. § 12112(b)(5)(A)
- 28 U.S.C. § 1927

**Rules**

- Federal Rule of Civil Procedure 8

- Fed. R. Civ. P. 16(b)
- Federal Rule of Civil Procedure 26
- Federal Rule of Civil Procedure 37(c)(1)
- Federal Rule of Civil Procedure 56
- Federal Rule of Evidence 401
- Federal Rule of Evidence 403
- Federal Rule of Evidence 602
- Federal Rule of Evidence 613(b)
- Federal Rule of Evidence 701
- Federal Rule of Evidence 801
- Federal Rule of Evidence 802
- Federal Rule of Evidence 803(6)
- Federal Rule of Evidence 901

**Regulations**

- 29 C.F.R. § 1630.2(o)(3)

**AI Use Compliance Statement**

**General Order 2025-04 Disclosure**

Pursuant to General Order 2025-04, Plaintiff discloses that portions of this motion were drafted with the assistance of a generative AI tool (ChatGPT) and affirms that the filing was fully reviewed, edited, and approved by Plaintiff, who accepts full responsibility for its content, accuracy, and citations.