UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS HOUSTON
DIVISION

*United States Courts*
*Southern District of Texas*
*FILED*

*JUN 3 0 2025*

*Nathan Ochsner, Clerk of Court*

| | |
|---|---|
| KISHA PETERS, | § |
| | § |
| Plaintiff, | § |
| | § |
| vs. | § Civil Action No: 4:24-cv-00772 |
| | § |
| BANNER HEALTH d/b/a BHT | § |
| BANNER HEALTH OF TEXAS | § |
| | § |
| Defendant. | § |

## PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY IN RESPONSE TO DEFENDANT'S ECF 234, SUPPORTED BY INDISPUTABLE EVIDENCE OF MATERIAL MISREPRESENTATION

**TO THE HONORABLE COURT:**

**INTRODUCTION AND BASIS FOR SUR-REPLY**

Plaintiff Kisha-Marie Peters respectfully seeks leave to file this short Sur-Reply to Defendant

Banner Health's Reply in Support of Its Motion to Strike (ECF 234). This filing is strictly

limited to correcting a material misrepresentation of fact concerning Plaintiff's evidentiary

submissions—specifically, Defendant's false claim that Plaintiff has "refused to submit the

actual audio files" relied upon in her Motion for Summary Judgment and that Defendant "is still

not in receipt of these files." (ECF 234 at 3.) This assertion is now disproven by incontrovertible

evidence showing Banner received, acknowledged, and authenticated the audio files during

discovery.

**Key Finding**: Defendant's own summary judgment filing (ECF 224) fails to expressly identify

the *after-acquired evidence* defense as a basis for summary judgment—either in its introduction,

1

conclusion, or any operative heading. This omission violates **Federal Rule of Civil Procedure 56(a)**, which requires a party to clearly identify the claim or defense upon which summary judgment is sought. As such, Defendant's summary judgment motion is procedurally defective and legally unsupported. Banner's response (ECF 234) is an exact duplicate of the arguments in ECF 224, forcing Plaintiff to relitigate issues already raised and addressed.

## I. Categorically False: Refuses to Submit Actual Audio Files

1. **Plaintiff's Motion for Summary Judgment (ECF 170)** included exhibits with **direct, functional links to the referenced audio recordings**, including but not limited to **Exhibit A-1**, which clearly contains a **Google Drive URL and timestamp** corresponding to the cited conversations.

2. On **November 19, 2024**, Plaintiff served Defendant with the **Affidavit Table of Contents** listing and linking each referenced audio file.

3. On **November 21, 2024**, Defendant's counsel — including Attorneys **Jill J. Chasson** and **Andrew Fox** — participated in a scheduled meeting initiated by Defendant.

4. During this meeting, which was **recorded by Plaintiff**, the parties **explicitly discussed the audio recordings**, including in **Affidavit Table of Contents previously submitted on November 19, 2024**. Defense counsel acknowledged the existence and location of these files.

   - *Exhibit A* – Email from Plaintiff transmitting the Affidavit Table of Contents with live audio links, sent on **November 21, 2024, at 9:23 PM**.

   - *Exhibit B:* (Affidavit of Authentication of Recording November 21, 2024)

   - ***Recording Direct URL:*** https://drive.google.com/file/d/1pm--IvLf8jn-7flOLNn5CUOdVennvPBH/view?usp=sharing

2

- **Key Timestamps from the November 21, 2024 Recording**:
- **13:30** – Parties discuss the *Affidavit Table of Contents* and the 16 linked audio exhibits labeled B-47 through B-62.
- **16:59** – Plaintiff sends the document with live Google Drive audio links via email again.
- **17:29** – Plaintiff requests confirmation of receipt.
- **17:41** – Defense acknowledges delayed email receipt due to their firewall security
- **21:41** – Plaintiff resends the email containing the audio-linked affidavit to the defense team again.
- **22:50 – Jill Chasson confirms** receipt of the document and attachment containing the *Affidavit Table of Contents*.
- **23:40 – Jill Chasson confirms** that the **active blue hyperlinks** to recordings B-47 through B-62 are accessible.
- **24:50** – Defense verbally confirms the **first three recordings are working**.
- **25:29 – Jill Chasson states**: *"So far, they are all working."* This includes Recording **B-57 (07/12/2022)** and agrees to follow up with a written confirmation.

5. On **November 27, 2024**, defense counsel **Jill Chasson** confirmed in writing that she accessed all of the audio recordings except for two. See ***Exhibit C***.

6. Additionally, these same recordings were submitted to the EEOC as part of Plaintiff's administrative discrimination charge (**EEOC No. 540-2022-03982**).

7. Defendant's discovery disclosures included Banner Bates-labeled **EEOC-0062 and EEOC-0106 through EEOC-0123**, which contain the referenced audio recordings. See **Exhibit D (**Affidavit of Authentication of EEOC Evidence**).**

8. Yet Banner has formally withdrawn its objections to Plaintiff's EEOC-related exhibits, effectively conceding their admissibility under Federal Rule of Evidence 801(d)(2). This concession confirms that statements made by Banner to the EEOC—including those referencing the contested audio recordings—are non-hearsay and legally sufficient.

9. Banner's attempt in **ECF 234** to now discredit the same materials reflects strategic inconsistency, not genuine evidentiary concern, but a broader pattern of litigation misconduct and supports Plaintiff's position that Banner has engaged in misrepresentation and fraud on the court.

## II. Legal Significance:

Defendant has made multiple representations to the Court claiming non-receipt, for the purpose of striking Plaintiff's summary judgment evidence. These misstatements are not simple errors — they are deliberate, material, and calculated to mislead the Court and exclude critical evidence from judicial review.

This conduct, if not corrected, risks compromising the integrity of these proceedings and may amount to **fraud on the court**, which occurs when a party knowingly makes false statements that "corrupt the judicial process itself" and prevent the Court from performing its impartial function. See **Herring v. United States**, 424 F.3d 384, 386 (3d Cir. 2005)[1]; **Rozier v. Ford Motor Co.**, 573 F.2d 1332, 1338 (5th Cir. 1978) ("Fraud on the court is fraud which is directed to the

---

[1] https://caselaw.findlaw.com/court/us-3rd-circuit/1117550.html

judicial machinery itself and is not fraud between the parties or fraudulent documents... it is where the impartial functions of the court have been corrupted.").

The defense actions meet the necessarily demanding standard for proof of fraud upon the court as concluded in **Herring v. United States**, that there must be: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court.[2]

Plaintiff respectfully requests that the Court take this misconduct into account when evaluating the need for a sur-reply and when assessing the reliability of Defendant's representations throughout the summary judgment process.[3]

### III. Additional Argument:

Therefore, Defendant's assertion that Plaintiff "**failed to cure the defects**" is not only inaccurate, but is refuted by the record itself. Defendant Banner Health is now **frantically seeking to exclude** Plaintiff's properly submitted and authenticated evidence — not due to any

---

[2] The United States Court of Appeals for the Sixth Circuit has set forth five elements of fraud upon the court, which consist of conduct: "**1**. On the part of an **officer of the court**; **2**. That is directed to the '**judicial machinery**' itself; **3**. That is **intentionally false, willfully blind to the truth, or is in reckless disregard for the truth**; **4**. That is a **positive averment** or **is concealment** when one is under a duty to disclose; **5**. That **deceives the court**." Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir.1993). Although other United States Courts of Appeals have not articulated express elements of fraud upon the court as the **Sixth Circuit did, the doctrine has been characterized "as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense**."

[3] In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 538 F.2d 180, 195 (8th Cir.1976) (citations omitted); see also Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir.1978) (holding "only the most egregious misconduct, such as bribery of a judge or members of a jury, **or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court**"). Additionally, fraud upon the court differs from fraud on an adverse party in that it "is limited to fraud which seriously **affects the integrity of the normal process of adjudication**." Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir.1988). Other United States Courts of Appeals expressly require that fraud upon the court must involve an **officer of the court**. See Geo. P. Reintjes Co. v. Riley Stoker Corp., 71 F.3d 44, 48 (1st Cir.1995); Demjanjuk, 10 F.3d at 348. The Ninth Circuit noted that "one species of fraud upon the court occurs when an '**officer of the court**' perpetrates fraud affecting the ability of the court or jury to impartially judge a case." Pumphrey v. Thompson Tool Co., 62 F.3d 1128, 1130 (9th Cir.1995); see also Weese v. Schukman, 98 F.3d 542, 553 (10th Cir.1996) (noting that "fraud on the court should embrace only that species of fraud **which does or attempts to, subvert the integrity of the court itself**, or is a **fraud perpetrated by officers of the court**") (citation omitted); Kerwit Med. Prods., Inc. v. N. & H. Instruments, Inc., 616 F.2d 833, 837 (11th Cir.1980) (same).

legitimate procedural defect, but because Defendant's own summary judgment submission **fails to satisfy the evidentiary requirements of Federal Rule of Civil Procedure 56(c)**. Rather than rely on competent, admissible evidence, Defendant has resorted to **mischaracterizations, concealment, and fabrication — willfully blind to the truth and in reckless disregard** of the record. These misstatements are not the product of negligence or mistake; they are **deliberate attempts by officers of the court** to **deceive the judiciary** and suppress critical evidence central to Plaintiff's claims.

Defendant had prior knowledge — well before this case was filed on March 1, 2024 — that no PHI (Protected Health Information) was included in the recordings, as confirmed by EEOC records already in its possession. Nevertheless, Defendant, through its counsel **Jill J. Chasson, Andrew Fox, and Shira R. Yoshor**, knowingly filed motions and objections **implying legal impropriety, despite having no good-faith basis**. This constitutes a willful, intentional fabrication of evidence and a calculated fraud on the Court. Such conduct undermines the integrity of judicial proceedings and squarely satisfies the standard for fraud on the court.

**IV. Defendant's Summary Judgment Motion (ECF 224) Should Be Denied with Prejudice**

Banner's ECF 224 fails both procedurally and substantively under Rule 56 and exceeds the bounds of its operative pleading. Despite being granted leave to assert only an after-acquired evidence defense (ECF 70), Banner injects extraneous arguments and misrepresents the evidentiary record, warranting denial with prejudice.

**A. Failure to Properly Invoke Defense – Rule 56(a)**

Banner never clearly identifies "after-acquired evidence" as a discrete ground for summary judgment, violating Rule 56(a), which requires each claim or defense to be explicitly stated and supported.

## B. Misrepresentation of Evidence – Rule 56(c)(4)

Shanks' declaration inaccurately claims Plaintiff was "unauthorized" to access systems,

contradicting Banner's own credentials and risk assessment, which classified the issue as "low

risk." Blickenstaff's statements are speculative and internally contradictory, lacking the clarity

and foundation McKennon demands.

## C. No Legal Support – McKennon Standard Ignored

Banner fails to cite McKennon v. Nashville Banner, 513 U.S. 352 (1995), or controlling Fifth

Circuit precedent, omitting the required legal standard for after-acquired evidence defenses.

## D. Lack of Supporting Evidence

Banner 00295 and 02170—its only cited documents—contain no PHI and do not independently

justify termination. They are unauthenticated and legally insufficient under McKennon's high

threshold.

## E. Improper Surplusage – Rules 8(d)(2) & 12(f)

Banner's motion goes beyond its operative pleading by including unrelated factual attacks and

legal theories. This violates Rule 8(d)(2)'s requirement for concise pleadings and invites

Rule 12(f) relief to strike immaterial and impertinent matter.

## Conclusion

Defendant's objections are unsupported by fact or law. Banner's strategic withdrawal of its

EEOC exhibit objections concedes that those statements—including references to the

recordings—are admissible as party-opponent admissions under Rule 801(d)(2). This directly

undermines their double-hearsay claim. The authenticated recordings and related documents

confirm that Banner had access to this evidence long before initiating its misrepresentations to

the Court.

7

Defendant's filings repeatedly repackage previously rejected arguments, not to advance the law, but to distract from their procedurally defective and legally unsupported summary judgment theory. No genuine dispute of material fact exists regarding Plaintiff's evidentiary submissions. Banner's conduct—including knowingly filing false claims regarding the availability and admissibility of evidence—satisfies the standard for fraud on the court and warrants sanctions. Banner's legal position was flawed from the outset, and their continued attempt to relitigate resolved matters is a misuse of judicial process. Plaintiff respectfully requests that the Court deny ECF 234, strike ECF 224, and impose appropriate sanctions to preserve the integrity of these proceedings.

**Relief Requested**

Plaintiff respectfully requests that the Court grant the following relief:

1. **Strike ECF 223, 224, and 234** in their entirety, as they rely on knowingly false representations of fact in violation of Federal Rules of Civil Procedure 11(b), 56(c), and this Court's prior procedural orders.

2. **Deny ECF 235** as improperly filed without leave of Court, in direct violation of ECF 205.

3. **Deny Defendant's opposition to Plaintiff's Motion for Summary Judgment (ECF 224)** based on misrepresentations and bad faith tactics, and consider **granting** Plaintiff's Motion for Summary Judgment and Reply Brief (ECF 170 and ECF 233) as effectively unopposed and supported by competent, admissible evidence.

4. **Impose monetary sanctions pursuant to Rule 11** against attorneys Jill Chasson, Andrew A. Fox, and Shira R. Yoshor in the amount of $25,000 each, totaling $75,000.

8

5. **Award $25,000 of the total sanction directly to Plaintiff** as compensatory relief under Rule 11(c)(4), with the remaining $50,000 payable to the Court as punitive sanction to deter future misconduct.

6. **Find that sanctions are warranted** due to the coordinated filing of materially false representations, obstruction of discovery obligations, and repeated violations of Court orders—conduct that meets the threshold for "**reckless disregard of the duty owed to the Court.**"

7. **Recognize Plaintiff's audio recordings and transcripts** as timely disclosed, properly authenticated, and admissible, and permit full consideration of these exhibits in support of Plaintiff's Motion for Summary Judgment.

8. **Preserve Plaintiff's evidentiary and procedural objections** for the appellate record, including all claims regarding fraud on the court, misrepresentation, and obstruction of justice.

9. **Deny any further argument** or filings by Defendant related to summary judgment or evidentiary issues, as there is **no genuine dispute of material fact** and the record is complete under Rule 56. Further submissions would only cause delay and violate this Court's prior procedural orders.

**June 30, 2025**

> **Respectfully submitted,**
> ___/s/ Kisha Peters___
> Kisha Peters
> *Plaintiff Pro Se*
> 2927 Westwood Manor Lane,
> Houston, Texas 77047
> Kipeters1107@yahoo.com
> Telephone: 832-782-0199

## CERTIFICATE OF SERVICE

I hereby certify that on **June 30, 2025**, I served a true and correct copy of **Plaintiff's Sur-Reply**

**to Defendant's ECF 234 (Limited to Evidentiary Misrepresentation)**

on Defendant's counsel via:

- **U.S. Certified Mail with Tracking**,

in accordance with Federal Rule of Civil Procedure **5(b)(2)(C)**.

Additionally, Defendant's counsel receives electronic notice through the **CM/ECF system**,

which provides an official filed copy upon docket entry.

**Shira R. Yoshor** (Lead Attorney of Record)
Email: yoshors@gtlaw.com
**Andrew Fox** (Pro Hac Vice Attorney)
Email: afox@cblawyers.com
**Jill Chasson** (Pro Hac Vice Attorney)
Email: jchasson@cblawyers.com

**Respectfully submitted,**

 _/s/ Kisha Peters_
 Kisha Peters
 *Plaintiff Pro Se*
 2927 Westwood Manor Lane
 Houston, Texas 77047
 Kipeters1107@yahoo.com
 Telephone: 832-782-0199

10

**Exhibit A-1 – Transcript Excerpt from HIPAA Termination Meeting – November 10, 2022**

**Direct URL:** https://drive.google.com/file/d/1oHGUMWv31BZbBx6txGuxO7B9vuB-lqC9/view?usp=drive_link

## 🖉 **Recording Link:** [Timestamp 00:00 – 14:20]

1. **Matthew Small:**
   "Good morning, and thanks for taking my call. I was reaching out because, prior to your leave, we asked you to participate in an investigation regarding recordings that we **believed** contained PHI."

2. **Kisha Peters:**
   "Can you provide examples of what you believe contained PHI? The exact call, date, and time, please."

3. **Matthew Small:**
   "The Privacy Team has completed their investigation. However, we'd like to give you one last opportunity to participate."

4. **Kisha Peters**
   "Today is my first day back, and you're referencing the prior investigation discussed with Ms. Jo-Marie Garber, where she asked me about this issue. Are you now saying that your Privacy Team is **assuming** I recorded a conversation containing PHI?"

5. **Matthew Small**
   "**No.** What I'm saying is that they've completed their investigation, but..."

6. **Kisha Peters:**
   "I told Ms. Jo-Marie Garber I have never recorded a conversation containing PHI. Unless you provide a confirmed date and time, this feels like a fishing expedition."

7. **Matthew Small:**
   "How are you certain there's no PHI in your recordings?"

8. **Kisha Peters:**
   "Because I was on those calls. I have never recorded a conversation that included PHI."

9. **Matthew Small:**
   "Generally, PHI is discussed on leadership calls."

10. **Kisha Peters:**
    "Then specify which call. You've completed an investigation but can't give me a date or time."

11. **Kisha Peters:**
    "I, Kisha Marie Peters, as of November 10, 2022, have never recorded any conversation where PHI was discussed or recorded."

12. **Kisha Peters:**
    "This continued questioning—after addressing this multiple times with Ms. Garber, Ms. Fagin, and Ms. Gleason—is harassment."

# EXHIBIT A

## Affidavat of Table of Content

From:  Kisha Peters (kipeters1107@yahoo.com)

To:  afox@cblawyers.com; jchasson@cblawyers.com

Date:  Thursday, November 21, 2024 at 02:23 PM CST



AFFIDAVIT OF TABLE OF CONTENT.doc
128 KB

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS HOUSTON
## DIVISION

| | | |
|---|---|---|
| **KISHA PETERS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | **Civil Action No: 4:24-cv-00772** |
| | § | |
| **BANNER HEALTH d/b/a BHT** | § | |
| **BANNER HEALTH OF TEXAS** | § | |
| | § | |
| **Defendant.** | § | |

### AFFIDAVIT OF AUTHENTICATION OF RECORDED MEETING (NOVEMBER 21, 2024)

**STATE OF TEXAS**

**COUNTY OF BRAZORIA**

**BEFORE ME**, the undersigned notary public, on this day personally appeared **Kisha-Marie Peters**, who, being duly sworn, deposed and stated as follows:

1. I am the Plaintiff in the above-captioned matter and am proceeding **pro se**.

2. I make this affidavit based on my personal knowledge and review of the relevant events and materials.

3. On **November 21, 2024**, I participated in a scheduled phone meeting with attorneys **Jill J. Chasson** and **Andrew A. Fox**, legal counsel for Defendant Banner Health, concerning this case.

4. The call lasted approximately 40 minutes 09 seconds and included discussion of:

   - Plaintiff's **Affidavit Table of Contents**;

1

- **Direct access links** to audio recordings cited in Plaintiff's Motion for Summary Judgment;

- Banner Health's access to and understanding of the evidence submitted.

5. I personally recorded the November 21, 2024, call, with all participants engaged in the conversation in real time. Pursuant to **Texas Penal Code § 16.02(c)(4)** and applicable federal law, **Texas is a one-party consent state**, meaning only one party to the conversation must consent to the recording.

6. As a party to the call, I lawfully recorded the conversation. The recording has not been altered, edited, or modified in any way.

7. A true and correct copy of the recording is accessible at the following secure

- URL: https://drive.google.com/file/d/1pm--IvLf8jn-7flOLNn5CUOdVcnnvPBH/view?usp=sharing

- The audio file has been provided to the Court as part of Plaintiff's Sur-Reply Exhibits

8. I created and maintain the original file. I am competent to identify the voices of all participants based on my direct interaction and familiarity.

9. The referenced materials confirm that Banner Health has had access to the audio recording they now claim they never received in **ECF 234**.

10. I submit this affidavit pursuant to:

- **Federal Rule of Evidence 901(b)(1)** – testimony of a witness with knowledge,

- **Federal Rule of Evidence 801(d)(2)** – statements offered against a party and made by its agent or representative.

2

12. This recording is directly relevant to key issues in this case, as it confirms that **Defendant was in possession of, had access to, and actively discussed the audio recordings cited in ECF 170** — all prior to submitting its reply brief in ECF 234.

13. The content of the recording refutes Defendant's claim of non-receipt and directly supports the admissibility and authenticity of Plaintiff's summary judgment evidence.

14. I respectfully submit this affidavit to authenticate the November 21, 2024, recording as accurate and admissible evidence.

15. Additionally, this recording was previously authenticated and submitted under oath in Plaintiff's earlier filed affidavit, **ECF 59**, titled "Affidavit of Truth – Functionality of Recording & Alleged New Recording," filed on **November 25, 2024**.

16. That affidavit included this same **November 21, 2024**, recording and confirmed Banner Health's receipt, acknowledgment, and functionality of the audio file.

17. **ECF 59** remains part of the official docket and directly contradicts Defendant's later claim in **ECF 234** that Plaintiff "refused" to submit the audio files.

18. I am competent to testify to these facts, and this affidavit is based on my personal review and firsthand knowledge.

**FURTHER AFFIANT SAYETH NOT.**

Executed on this **30th** day of **June**, **2025**.

Signature: _____

              **Kisha Peters**

**SWORN TO AND SUBSCRIBED BEFORE ME**, the undersigned authority, on this *30* day of *June*_____, **2025**, by **Kisha Peters**, who personally appeared before me, proved to me on

3

the basis of satisfactory evidence to be the person whose name is subscribed to this instrument,

and affirmed that the foregoing statements are true and correct.

_D'Erick Davenport_

**Notary Public Signature**

**Printed Name:** _D'Erick Davenport_

**Notary Public, State of Texas**
**My Commission Expires:** _August 21, 2027_



**June 30, 2025**

Respectfully submitted,
 _/s/ Kisha Peters_
Kisha Peters
_Plaintiff Pro Se_
2927 Westwood Manor Lane,
Houston, Texas 77047
Kipeters1107@yahoo.com
Telephone: 832-782-0199

4

## CERTIFICATE OF SERVICE

I hereby certify that on **June 30, 2025**, I served a true and correct copy of **Affidavit of Authenticating of Recorded Meeting (November 21, 2024)** Practices on Defendant's counsel via:

- **U.S. Certified Mail with Tracking**,

in accordance with Federal Rule of Civil Procedure **5(b)(2)(C)**.

Additionally, Defendant's counsel receives electronic notice through the **CM/ECF system**, which provides an official filed copy upon docket entry.


**Shira R. Yoshor** (Lead Attorney of Record)
Email: yoshors@gtlaw.com
**Andrew Fox** (Pro Hac Vice Attorney)
Email: afox@cblawyers.com
**Jill Chasson** (Pro Hac Vice Attorney)
Email: jchasson@cblawyers.com


**Respectfully submitted,**

*/s/ Kisha Peters*
Kisha Peters
*Plaintiff Pro Se*
2927 Westwood Manor Lane
Houston, Texas 77047
Kipeters1107@yahoo.com
Telephone: 832-782-0199

# EXHIBIT C

As promised on our November 21 call, we checked the functionality of all links in the Word version affidavit. As you know, I tried several of them on the call and all of the ones I tried worked. We have since tested the rest of the links, and all of them worked except the following:

- B-54    Link for 06/22/2022 recording actually links to B-53 (06/15/2022 Siebenhausen recording), so we don't have B-54
- B-55    We were not able to access this one at all

If you can please provide us with functioning links to exhibits B-54 and B-55, we will have the complete set of what you submitted to the Court on November 19. Thank you.

**Jill Chasson**
O: 602.381.5481
M: 480.215.0860
jchasson@cblawyers.com

**From:** Kisha Peters <kipeters1107@yahoo.com>
**Sent:** Thursday, November 21, 2024 1:19 PM
**To:** Jill Chasson <jchasson@cblawyers.com>; Andrew Fox <afox@cblawyers.com>
**Subject:** AFFIDAVIT TABLE OF CONTENT


Please review the document and keep me posted.

- I provided the document again in response to the defense's **Request for Production**.
- On **November 21, 2024**, I resubmitted the same document twice at the defense's request.
- Most recently, I provided the same recording via email on **November 21, 2024**, demonstrating the recording's functionality.
- This is the same recording as **Exhibit B-55.**

4. **Abuse of Civil Procedure Through Duplicative Requests:**
   This repeated pattern of requesting documents already in the defense's possession is not only burdensome but also constitutes an abuse of civil procedure. For example:

   - The defense's behavior mirrors its handling of 700+ duplicate **documents** previously identified during discovery.
   - Such conduct violates Rule 26(b)(1) of the Federal Rules of Civil Procedure, which requires discovery to be proportional to the case's needs and free from unnecessary duplication.
   - Repeated requests for the same materials impose undue burdens on me as a pro se litigant and undermine the efficiency and fairness of these proceedings.

I respectfully request that the defense conduct a thorough review of the materials already provided, including Ms. Myrick's recording, to avoid further duplication and undue burden. This is an internal issue you are experiencing.

**Best regards,**
Kisha Peters

 On Wednesday, November 27, 2024 at 01:32:22 PM CST, Jill Chasson <jchasson@cblawyers.com> wrote:

Ms. Peters,

Re: AFFIDAVIT TABLE OF CONTENT [CB-MAINDOCS.FID317922]

From:  Kisha Peters (kipeters1107@yahoo.com)

To:     jchasson@cblawyers.com

Cc:     afox@cblawyers.com

Date:   Wednesday, November 27, 2024 at 04:26 PM CST

**Dear Attorney Chasson,**

Thank you for your response addressing the issues related to the recordings. Below, I provide clarification and emphasize ongoing concerns regarding duplicative discovery requests:

1. **Affidavit Table of Contents #56 (Exhibit B-53) and #57 (Exhibit B-54):**
   I will inform the Court in my next affidavit that these exhibits refer to the same recording. Specifically, the link for the **06/22/2022 recording (Exhibit B-54)** redirects to the **06/15/2022 Siebenhausen recording (Exhibit B-53)**.

2. **Functionality of Exhibit B-55:**
   I have ensured the operability of all recordings. On **Thursday, November 21, 2024**, I provided the defense with an additional video via email and demonstrated to the Court that **Exhibit B-55** is fully functional. This recording includes:

   - **Ms. Myrick explicitly refuted Donita's allegations,** further substantiating the relevance and accuracy of the recordings. I encourage the defense to review this segment in good faith, as it provides indisputable evidence disproving **Ms. Lukich's fabricated statements**.
   - **Susan Gleason's knowledge of events dating back to April 5, 2022,** establishes that the assault against me was intentional.

3. **Timeline of Document and Recording Submissions:**

   - The defense has had **Ms. Myrick's recording** in its possession since the EEOC stage of proceedings, as it was included in my rebuttal to the defense's position statement.
   - I resent this same document during the **initial discovery transfer in July 2024**.

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS HOUSTON
DIVISION

| | | |
|---|---|---|
| **KISHA PETERS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | **Civil Action No: 4:24-cv-00772** |
| | § | |
| **BANNER HEALTH d/b/a BHT** | § | |
| **BANNER HEALTH OF TEXAS** | § | |
| | § | |
| **Defendant.** | § | |

## AFFIDAVIT OF AUTHENTICATION OF EEOC EVIDENCE

**STATE OF TEXAS**

**COUNTY OF BRAZORIA**

**BEFORE ME**, the undersigned notary public, on this day personally appeared **Kisha-Marie Peters**, who, being duly sworn, deposed and stated as follows:

1. I am the Plaintiff in the above-captioned matter and am proceeding **pro se**.

2. I submit this affidavit to authenticate a set of evidentiary materials that were submitted to the U.S. Equal Employment Opportunity Commission (EEOC) in connection with **Charge No. 540-2022-03982**.

3. I have personally reviewed the following EEOC files containing audio recordings. These materials — including the audio recording of the **July 12, 2022**, phone call — were transmitted to the EEOC by me and became part of the official investigative file.

4. The following EEOC-labeled documents — **EEOC-0062, EEOC-0106 through EEOC-0123** — specifically include:

1

- The audio recording of the **July 12, 2022, phone conversation** (**EEOC-0119**).

- Supplemental materials that identify, discuss, and cite this recording as part of the evidentiary submission and administrative investigation.

5. These documents are true and accurate copies of what I submitted to the EEOC and include content that was directly and explicitly disclosed to Banner Health during the administrative process.

6. I received these same EEOC files, including the referenced recordings, from Defendant in discovery, produced as part of their disclosures.

7. Each document listed above is a true and unaltered copy of what I originally submitted to the EEOC. No modifications or alterations have been made.

8. The referenced materials confirm that Banner Health has had access to the audio recording they now claim they never received in **ECF 234**.

9. I offer these documents as authenticated exhibits pursuant to:

- **Federal Rule of Evidence 901(b)(1)** – testimony from a person with knowledge;

- **Federal Rule of Evidence 801(d)(2)** – statements offered against an opposing party that were made by the party's agents or employees on a matter within the scope of that relationship.

10. These documents are directly relevant to material facts in this case and reflect inconsistencies and admissions critical to Plaintiff's claims of discrimination, retaliation, hostile work environment, and wrongful termination.

11. I affirm under oath that the EEOC-labeled documents referenced herein — including but not limited to **EEOC-0002-61** — were received directly from Defendant Banner Health

through its discovery production labeled **OneDrive_1_8-16-2024**, as shown in the folder provided by Defendant's legal counsel.

12. These documents were stored alongside other Banner Bates-stamped files, indicating that Banner authenticated and disclosed these materials as part of its Rule 26 discovery obligations. This folder includes:

- **EEOC-0001**

- **EEOC-0002-61**

- **EEOC-0062-132**

- **EEOC-0133-241**

13. These documents match the exhibits cited in Plaintiff's filings and confirm Defendant's prior possession of key evidence — including recordings and EEOC correspondence — long before **Defendant's denials in ECF 234**.

14. I respectfully submit this affidavit in support of the record and to authenticate the above-referenced documents as properly disclosed, material evidence.

15. I am competent to testify to these facts, and this affidavit is based on my personal review and firsthand knowledge.

**FURTHER AFFIANT SAYETH NOT.**

Executed on this **30th** day of **June**, **2025**.

**Signature:** _____
                Kisha Peters

**SWORN TO AND SUBSCRIBED BEFORE ME**, the undersigned authority, on this **30** day of **June**, **2025**, by **Kisha Peters**, who personally appeared before me, proved to me on

3

the basis of satisfactory evidence to be the person whose name is subscribed to this instrument,

and affirmed that the foregoing statements are true and correct.

_____
**Notary Public Signature**

**Printed Name:** _D'Erick Davenport_

**Notary Public, State of Texas,**
**My Commission Expires:** _August 21, 2027_



**June 30, 2025**

**Respectfully submitted,**
**/s/ Kisha Peters**
Kisha Peters
*Plaintiff Pro Se*
2927 Westwood Manor Lane,
Houston, Texas 77047
Kipeters1107@yahoo.com
Telephone: 832-782-0199

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **June 30, 2025**, I served a true and correct copy of **Affidavit of Authenticating EEOC Evidence**
Practices on Defendant's counsel via:

- **U.S. Certified Mail with Tracking**,

in accordance with Federal Rule of Civil Procedure **5(b)(2)(C)**.

Additionally, Defendant's counsel receives electronic notice through the **CM/ECF system**, which provides an official filed copy upon docket entry.


**Shira R. Yoshor** (Lead Attorney of Record)
Email: yoshors@gtlaw.com
**Andrew Fox** (Pro Hac Vice Attorney)
Email: afox@cblawyers.com
**Jill Chasson** (Pro Hac Vice Attorney)
Email: jchasson@cblawyers.com

**Respectfully submitted,**

_/s/ Kisha Peters_
Kisha Peters
*Plaintiff Pro Se*
2927 Westwood Manor Lane
Houston, Texas 77047
Kipeters1107@yahoo.com
Telephone: 832-782-0199

5

| Name | Type | Compressed size | Password ... | Size | Ratio |
|---|---|---|---|---|---|
| Banner-00056-58 | Adobe Acrobat Document | 1,518 KB | No | 1,518 KB | 0% |
| Banner-00059-60 | Adobe Acrobat Document | 1,649 KB | No | 1,649 KB | 0% |
| Banner-00061-62 | Adobe Acrobat Document | 948 KB | No | 948 KB | 0% |
| Banner-00063-80 | Adobe Acrobat Document | 3,040 KB | No | 3,040 KB | 0% |
| Banner-00081-84 | Adobe Acrobat Document | 732 KB | No | 732 KB | 0% |
| Banner-00085-86 | Adobe Acrobat Document | 721 KB | No | 721 KB | 0% |
| Banner-00087-94 | Adobe Acrobat Document | 733 KB | No | 733 KB | 0% |
| Banner-00095-96_Redacted | Adobe Acrobat Document | 779 KB | No | 779 KB | 0% |
| Banner-00097-99 | Adobe Acrobat Document | 1,596 KB | No | 1,596 KB | 0% |
| Banner-00100-101 | Adobe Acrobat Document | 1,656 KB | No | 1,656 KB | 0% |
| Banner-00102-104 | Adobe Acrobat Document | 1,688 KB | No | 1,688 KB | 0% |
| Banner-00105-107 | Adobe Acrobat Document | 813 KB | No | 813 KB | 0% |
| Banner-00108-109 | Adobe Acrobat Document | 1,470 KB | No | 1,470 KB | 0% |
| Banner-00110-111 | Adobe Acrobat Document | 1,582 KB | No | 1,582 KB | 0% |
| Banner-00112-117 | Adobe Acrobat Document | 1,720 KB | No | 1,720 KB | 0% |
| Banner-00118-119 | Adobe Acrobat Document | 1,679 KB | No | 1,679 KB | 0% |
| Banner-00120-121 | Adobe Acrobat Document | 1,584 KB | No | 1,584 KB | 0% |
| Banner-00122-125_Redacted | Adobe Acrobat Document | 1,793 KB | No | 1,793 KB | 0% |
| Banner-00126-143_Redacted | Adobe Acrobat Document | 3,248 KB | No | 3,248 KB | 0% |
| Banner-00144-145 | Adobe Acrobat Document | 1,347 KB | No | 1,347 KB | 0% |
| Banner-00146-147 | Adobe Acrobat Document | 975 KB | No | 975 KB | 0% |
| Banner-00148 | Adobe Acrobat Document | 586 KB | No | 586 KB | 0% |
| Banner-00149 | Adobe Acrobat Document | 649 KB | No | 649 KB | 0% |
| Banner-00150-152 | Adobe Acrobat Document | 730 KB | No | 730 KB | 0% |
| Banner-00153-161 | Adobe Acrobat Document | 1,733 KB | No | 1,733 KB | 0% |
| Banner-00162-199_Redacted | Adobe Acrobat Document | 5,179 KB | No | 5,179 KB | 0% |
| Banner-00200-201 | Adobe Acrobat Document | 721 KB | No | 721 KB | 0% |
| Banner-00202 | Adobe Acrobat Document | 716 KB | No | 716 KB | 0% |
| Banner-00203 | Adobe Acrobat Document | 713 KB | No | 713 KB | 0% |
| Banner-00204-206 | Adobe Acrobat Document | 724 KB | No | 724 KB | 0% |
| Banner-00207-208 | Adobe Acrobat Document | 975 KB | No | 975 KB | 0% |
| EEOC-0001 | Adobe Acrobat Document | 721 KB | No | 721 KB | 0% |
| EEOC-0002-61 | Adobe Acrobat Document | 16,723 KB | No | 16,723 KB | 0% |
| EEOC-0062-132 | Adobe Acrobat Document | 2,434 KB | No | 2,434 KB | 0% |
| EEOC-0133-241 | Adobe Acrobat Document | 5,080 KB | No | 5,080 KB | 0% |
| Plaintiff's Discovery Kisha vs BH | Adobe Acrobat Document | 100,202 KB | No | 100,202 KB | 0% |

**BRIAN PRIDDY**                                    **BEST AVAILABLE COPY**

| | |
|---|---|
| **From:** | CHRISTINA HERNANDEZ |
| **Sent:** | Friday, December 2, 2022 6:04 AM |
| **To:** | JESUS SANTIAGO |
| **Subject:** | FW: EEOC Number: 540-2022-03982 Amend Charges to Include Wrongful Termination |
| **Attachments:** | Wrongful Termination.docx |

Good Morning Jesus, I think you took this charge charging party wants amend charge. Can you help with this one.

-----Original Message-----
From: Kisha Peters < ██████████████████ >
Sent: Thursday, December 1, 2022 9:58 PM
To: CHRISTINA HERNANDEZ <CHRISTINA.HERNANDEZ@EEOC.GOV>
Subject: EEOC Number: 540-2022-03982 Amend Charges to Include Wrongful Termination

CAUTION: The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Hello Ms. Hernandez,

I want to amend my charges to include wrongful termination. If this email process needs to be corrected, please guide me so I can follow the correct steps to amend my charges. I have the documentation for your review.

Please guide me. I am looking forward to speaking with you soon.

Kisha Peters
████████████

1

On Tuesday, November 7, 2023 at 10:10:48 AM CST, JESUS SANTIAGO <jesus.santiago@eeoc.gov> wrote:

Received. Thank you!

**From:** Kisha Peters < ████████████████████ >
**Sent:** Tuesday, November 7, 2023 9:55 AM
**To:** JESUS SANTIAGO <JESUS.SANTIAGO@EEOC.GOV>
**Subject:** KMpeters Rebuttal To Banner Health Position Statement

> **CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Dear Mr. Jesus,

Here is a copy of my rebuttal to Banner Health's position statement. I also shared some recordings through my Google Drive because I could not add them to this email. I also added the links inside the rebuttal; therefore, you can double-click on the link, which should bring you directly to your recording. Please let me know if you need any additional information.

2

Please accept this rebuttal response to Banner Health's position statement regarding charges of intentional race discrimination, retaliation, wrongful termination, and hostile work environment. As discussed below, Banner Health supported the unlawfully discriminatory business practices of several Senior Leaders, including the Human Resources manager and his direct report, in **violation of Title VII of the Civil Rights Act of 1964, including 42 U.S.C 1981**.

The information I provided is the facts to date and is submitted to aid the EEOC in its investigation and facilitate an early resolution of the matter. While my responses are facts, Kisha Peters reserves the right to present new or additional information later, whether for substantive or clarification purposes, including requesting all parties to **submit to a lie detector test voluntarily or involuntarily.**

### BACKGROUND FACTS

In response to Banner Health's statement that I seemed resentful is another opportunity to bypass that **Black Lives Don't Matter and Black Voices are not heard at Banner Health** because African Americans are not afforded the same luxury as my Caucasian cohort for following the same policy and procedure of the organization. I submitted a complaint to **Susie Gleason (Department Director)** about **Tabbi Fagin's (Sr. Director)** employment discrimination because of my race and national origin, which is a protected activity. In the months following my Complaint, I received a written disciplinary action for following the same process as my cohorts, which is an adverse action. I submit another complaint alleging that the denial of hiring future apprentices is retaliation for my original discrimination complaint, showing a causal connection. Other employees with similar qualifications who have not submitted a discrimination complaint have continued to be granted the privilege of hiring apprentices. These facts that I, Kisha Peters, have been subjected to retaliation for raising a discrimination complaint in violation of **Chapter 21, Title VII, ADEA, or A.D.A. including 42 U.S.C 1981 and 42 U.S.C. § 2000e**

### Concerns with Ms. Peters' Communications Lead to Initial Discipline

From **08/2016 to 09/21**, all leader in the A.C.C. department was advised to ensure their work schedule was focused on business needs, which mean we have a schedule in Kronos that will show **8:00 a.m. to 4:30 p.m**. When I stated those hours, Ms. Fagin said **8 a.m. to 4:30 p.m**. with no lunch; known as a leader of the A.C.C. department, we do not have a scheduled lunch see **DVD Voice Recording, 10/13/2021, from 25:0 to 27:16.** Leaders are expected to meet the department's needs, which means you may need to come in early or stay late; therefore, the A.C.C. department did not follow a set schedule for work, lunch or breaks. There was no resistance because Ms. Fagin was fully aware of this process before becoming my leader, as she is currently afforded the same incentive. **Double-click the link to listen to the recording, which contains no PHI.** DVD Recording Tabbi / Renee 25:00 to 27:16 ✳

Leaders and coders were approved to start work two hours before their shift and stay as late as two hours after. This process changed for the coders, who were now permitted to begin/end their work schedules between **8 a.m. and 8:30 p.m.** and could only clock in thirty minutes before their shift, but the leader was still given the autonomy to follow the first guidance. This process was to promote work-life balance for the entire coding department. As a reminder, leaders' breaks and lunches were always different each day. All leaders in the department had the luxury of working 16 position hours as a second position based on business needs. **Cynthia Bowers-** ▓▓▓▓▓▓▓ **can verify the information.**

The previous leader, **Robert Franco**, was initially the Plum Leaders Optum super user; after he resigned, Renee asked for a volunteer. I was very reluctant, but I stepped up for the team. All super users were testing the same information to ensure we reported the same information during the Wednesday leadership calls on how this particular test would affect their current coding area positively or negatively; for me, it was the Outpatient coding areas.

When it was announced I would be reporting to Ms. Fagin, I contacted my current supervisor by phone (**Renee B.**) and asked if she could place another leader as the Plum Leaders Optum superuser. I was concerned that this process would not be a great placement because of Ms. Fagin and my previous work history. I continued and stated, "Please ask Bowere if she would step in, and I can bring her up to speed as I have done when Robert left. Renne said, "I am fully aware of the history, and you will only report to me referencing the Optum superuser assignment. I then stated I would like to put my head down and do my job. I do not want any conflict with Ms. Fagin. However, against my better judgment, I decided to stay. When Ms. Fagin asked me to place some charts on hold for the C.S.T., it **conflicted** with the current directive I received from Renee B on **10/07/21 @ 8:06 a.m**. Renee then emailed Tabbi to contact Alain and Kris to help with pending accounts. At this point, I thought the issue was resolved and continued working on the current task.

Ms. Fagin then continued **targeting and harassing** me, even after a resolution was provided. She continued by asking what I meant by using the word surpassed. As a Sr. Leader with a wide variety of educational knowledge, Ms. Fagin understood the meaning of surpassed. Still, she continued the **unwelcome harassing conduct, including intimidation**, by stating, "It appears you are refusing to help," **insinuating insubordination**. Ms. Fagin continued to create **a hostile work environment** with her unwillingness to use the other two leaders, as suggested by her peer. The only person who was confrontational was Ms. Fagin.

All leadership teams disagree on work-related topics, but I never order Ms. Delicia Johnson, Associate Director of Coding, around. However, this allegation is new because I was never informed of this incident before Banner Health's position statement. Banner Health must provide **specific events, dates, and times** for each allegation, or there will be continuous **browbeaten fictitious allegations without actuality stated against me.**

Documented Verbal Discussion was based **100%** on Ms. Fagin's **perceptions and assumptions**. Her interpretation of what she believed I was stating versus what I actually said. During the DVD discussion, Ms. Fagin noted that it was unprofessional of me to tell her to ask Renee how she managed someone of my **CALIBER**. I was only suggested to Ms. Fagin to get insight into how Renee B. successfully managed me and the team. Still, based on her perceptions and assumptions, she declared it unprofessional. Please review the **10-13-21 DVD  Recording Tabbi Renee, from 16:11 to 17:47,** where Ms. Fagin confirms that I offered her a suggestion she deemed unprofessional. She then uses Susie Gleason, department director, name on the call as a form of intimidation/threat, which she confirmed see **10-13-21 DVD  Recording Tabbi Renee, from 18:09 to 19:16.** Nevertheless, Renee B. did not speak up on the directive she provided for the Optum Superuser guidance; therefore, I reserve the right to request she takes a lie detector test as an unbiased tool to seek factual information referencing this case of intentional discrimination, retaliation, hostile work environment, malice, misdirection, disparage, and targeting. Double-click the link to listen to the recording, which contains no PHI.

**In response to Banner - Exhibit 3 & 4 - Listen to recording 10/13/2021, and what's being described is different from what was stated. It's based on Ms. Fagin's perception.**

After speaking with H.R. Employee Relations Coordinator Jo-Marie Garber, I learned the hospital does not allow employees to challenge a DVD, and there was no problem-solving process at this level where I stated there should be a problem-solving process at all levels. Still, Banner Health failed to provide specific details of their allegation of my supposed lack of collaboration and professionalism, which is continuous downtrodden fabricated accusations without facts. Several events of Ms. Fagin held me accountable for guidance that was not written double standards, resulting in Banner Health Sr. Leadership/H.R. upholding **KNOWINGLY** false information, disciplining me for following the same leadership guidance as my white cohort, and failing to do an investigation before deeming me guilty and required education**.**

**Complaints from Coders and Peer**
I inherited about five coders from the previous leader, Robert Franco. I scheduled a meet and greet to introduce myself to the team, provide team guidance, and get to know the new

members. During the call, I asked all the coders to set up their work list, as illustrated in the email I previously sent each member before the Meeting. However, this is the **guidance shared with all plum leaders from Ms. Fagin** during a leadership meeting (date &time). This process was implemented because Optum was new, and most coders became overwhelmed searching for the accounts they were trained to code. The decision was made for all outpatient coders to hide any worklist they were not trained to code by the education team. **Cynthia Bowers-█████ ████████ can verify the information.**

Next, I asked each member how they would like me to address each. For example, I am addressed as Ms. P or Ms. Peters. I ask if anyone has an exception to addressing me as such. During the call, I received no rebuttal, and all members proceeded to advise me on how they would like to be addressed. I informed the team that I speak formally based on my culture and religious practices; therefore, you may hear me address you as Ms., followed by your preferred name. I then ask if any of the team members find exceptions to me addressing them as such. Each team verbally stated they had no issues with me addressing them as Ms., and they all welcomed the communication style.

I then asked the team what Robert Franco, their previous leader, processes when sending out accounts, required to be coded by email. The team stated, "We were able to code them at the end of their shift, which was a **different direction provided by previous leader Renee B and current leader Ms. Fagin.** Leaders were advised to inform their team to code those accounts first and then proceed to their normal coding workflow **(Discussed during the October 2021 and November 2021 Plum Leaders Huddle Meeting).** I advised the team that the process for Team Plum B is different; any accounts sent out by email from me must be coded first and not at the end of their shift. I further emphasized that the team works as a group. For example, if I send a list out to be coded and you or your peers are getting ready to select a new account, they first will check their email for accounts to be coded and sent by me. The coder/s who checks the email will email the entire team stating, **"I'll code these accounts."** The process kept everyone informed and prevented double work. The team welcomed the process, and I told them it would take some time to get us to, but they all would do great. One of the team members, **Jessica Centers,** took to the process extremely fast. She was also the coder who requested to stay on my team after it was time for the **Plum A members** to move to their new leader. Suppose I was speaking to the coders as described by other coders on the call: WHY would coder **Jessica Centers** request such an **ATROCIOUS** person as their current leader? Ms. Fagin informed me of her request, and I openly welcomed Ms. Centers to Team Plum B. **Jessica Centers (████████) can confirm this information.**

During a **February 09, 2022** meeting, Ms. Fagin stated that she received complaints from some Plum A members. I asked if she investigated the complaints properly, and she said she was bringing this information to my attention. **She was not writing me up on corrective action. See the 02-09-22 Tabbi Received Complaint 6:45, but at 13:50,** Ms. Fagin stated. "I am not trying to write you up or go to H.R. and proceed to confirm the coders that complain were indeed the two coders I had previously spoken to her about before the complaints were initiated.

I heard all the information, but Ms. Fagin again reprimanded me for following her guidance. Still, never providing clear examples or specific events was broad but based mainly on **assumptions and perceptions**. Indeed, she states she is not trying to make this a formal complaint, but here, we are using the same information as a formal complaint. **(02-09-22 Tabbi Received Complaint 20:19).** This is one of the main reasons I could not trust Ms. Fagin to begin to earn thrust continuously. When she received the Complaint referencing the Optum list from **Ms. Iris,** this was the opportunity to state, "This was a directive the senior. Leadership team gave to each Associate Director because we were working toward a more efficient approach for the coder working in a new system.**(02-09-22 Tabbi Received Complaint 23:08). However this is the same call Ms. Fagin** we discussed the Wow- What issue **50:30 - 55:30** following. 02-09-22 Tabbi Received Complaint (Assumed/Perceived) 56:00 - 1:00  Are you saying you don't want to participate in our conversation, declining to answer my question, and not trying to write you up? 1:00 -1:11.

See 02-09-22 Tabbi Received Complaint 24:40 for my rebuttal**, but Ms. Fagin still failed to interview the other members to confirm and verify if the complaints were valid.** I also confirm that I contacted Carter to meet to discuss our differences on **February 08, 2022; in return, she sent me an M.V.P. award on February 09, 2022.** We agreed to ensure respect and build a more substantial work relationship to 02-09-22 Tabbi Received Complaint 33:05.

**Double-click the links to listen to the recording, which contains no PHI.**

I also take inception to be identified as a **"Toxic"** leader without any facts to support any supporting evidence. As for my A.R.C., Ms. Fagin stated she had already decided what she wanted to **AWARD** me for my yearly appraisal without my input. However, this behavior is current practice at Banner Health, where the senior leadership team will reward you for what they **feel** and **discipline** you on what they **assume** versus **facts**.

**Complaint from Coding Educator**

On **March 23, 2022**, Donita Lukins sent me an email sharing her concerns referencing Ms. Rhonda Myrick's performance within the apprentice program. As a result, I invited educator Donita Lukins to attend a prescheduled meeting with Ms. Myrick to share her concerns. **All 1:1s are prescheduled** to ensure all coders have advanced knowledge when they meet with me to review their previous month's errors with their leader. Ms. Lukins's Complaint to her supervisor stated, "When **Ms. Lukich** logged into the virtual meeting, she observed **Ms. Peters berating Ms. Myrick.**" It was said, "Ms. Lukich was so disturbed by the **bullying** way **Ms. Peter**s spoke to **Ms. Myrick** that she raised the issue with **Ms. Gillam**. " However, **neither Ms. Fagin nor Ms. Linda Gillam interviewed Ms. Myrick to verify whether the accusations were true.**

Both Sr. Directors believed the **fabricated** story because they **felt, presumed/assumed** I was guilty and required re-education before the meeting. I was guilty because I am **BLACK**. As a friendly reminder, **the education team needed a process for** the leader, coder, and educator to meet when **this type of issue arose**; therefore, I extended the invitation to **Donita Lukins** to join my **prescheduled** meeting. As a final result of the **03/25/2022 Meeting Tabbi/Linda's voice recording**, Linda stated "she would now update the Apprentice PowerPoint slides, set the meeting in advance **(03-25-22 Meeting Tabbi -Linda's Unverified Accusations (16:56)**, and make the leaders **OPTIONAL (16:58)**, but she would prefer the leaders to come if we can. Double-click the link to listen to the recording, which contains no PHI.

I was disciplined for following the same process as my cohorts, which is an adverse action of my **initial Complaint of intentional racial discrimination and intentional retaliation.** Other employees with similar qualifications who have not submitted a discrimination complaint have continued to be granted the privilege of working in a non-discriminatory, not targeted, criticized, or marginalized discriminatory work environment.  Remember, a procedure was not in place until the **03/25/22 meeting.**

Both Ms. Myrick and I are black African-American females working for Banner Health, where **Black Lives Don't Matter and Black Voices are not heard**. The fabricated story of me berating, belittling, and bullying Ms. Myrick led Sr. Director Ms. Fagin and Ms. Linda Gillam to assume that I did not understand the apprentice procedure and forced me to sit through training without verifying if the accusation was true.

History repeats itself. Always remember the story of Emmet Till still; these types of targeting and intentional, systematic racism are still happening in today's work society but are more prevalent amongst Black African-Americans. Ms. Linda Gillam perceived there was a misunderstanding. She assumed I did not understand the procedure at **2:10 – 5:08**. Then Ms. Linda Gillam, at **5:09 -  5:15,** stated with pure disregard for what I was saying, 03/25/2022

✳ Meeting Tabbi/Linda's - Go right ahead. However, we are still going to go through the Apprentice procedure. Acknowledging it does not matter what I stated because she perceived/assumed there was a misunderstanding - then there was a misunderstanding.

However, I followed the same procedure as my **white cohorts**, and still, they perceived/assumed I didn't know a particular topic; it determined I was guilty and required re-education without ascertaining the truth from the only other person who was on the call, **Ms. Myrick**.

To further prove Ms. Lukins's story is indeed fabricated, listen to the recording "1:1 Ms. Myrick ✳ ✳ at 7:50 – 8:57 mark" on June 23, 2022, who confirmed she met with **Department Director Susie Gleason 04/05/2022** and advised that nothing of bullying, berating, or humiliating never happened to her but because Ms. Myrick is black African-American females her voice was not heard. I was then advised that based on the incident on **03/25/2022**, I could not hire other apprentices, which is based on a fabricated story.

Remeber, the education department did not have a process in place for the leaders, coders, and apprentices to follow if this type of issue arose. As a result of the **03/25/2022** meeting, a meeting notice was added to the calendar of all parties, but the meeting was **OPTIONAL** for leaders. I was disciplined for a process the department did not have in place, and because I invited Ms. Lukins to my prescheduled meeting, I was supposed to know that the education team now runs the meeting; this was the information that I was re-educated on which was not part of the process before the 03/25/22 meeting. This process was later added to the apprentice's procedure process. Double-click the link to listen to the recording, which contains no PHI.

**In response to Banner - Exhibit 5 & 6 - Listen to recording 03/25/22, and what's being described is different from what was stated. It's based on fabrication and their assumption/ perception.**

Prescheduled Meetings Confirmation:
Ms. Juede – ███████
Rhonda Myrick – ████████ ,
Rebecca Blaine – ████████ ,
Daria Morris - at ████████
Cynthia Bowers Associate Director-████████

**Additional Complaints from Peers and a Subordinate**

How is it offensive and inappropriate of me to address my previous leader as **"Boss Lady."**
However, it is appropriate for Sherrie **Carter to address Ms. Fagin as Tab** because she identified
as white and received preferential treatment. Based on the first five years of my tenure at
Banner Health, I was reported to **Renee B**, who approved of me addressing her as "**Boss Lady**."

The accusations are coming from **Sherrie Carter and D. Siebenhausen**, who identify as white
and have also committed some heinous acts toward me as well. Please listen to the May 10,
2022, recording where I asked clarifying questions about paid time off that I **was deemed
offensive, inappropriate, and unprofessional by D. Siebenhausen**; however, this is my first day
back from receiving self-care from a mental health condition. I was described **by D.
Siebenhausen** as openly combative and caused tension in the presence of college students.
Nevertheless, this is also the **SAME** call Sherrie Carter addressed me as "**Hon**," which I found
very unprofessional by her statement, "You're Fine, Hon, "20:59" because Sherrie Carter is a
white American she was approved to address me in that manner by Ms. Fagin.  I spoken with
Ms. Fagin on 05/11/22 expressing my discomfort of being address in that manner.
Nevertheless, my concern was belittle and Ms. Fagin supported S. Carter behavior.  Sherrie
Carter deemed a hostile attitude and lack of professionalism toward her and others (including
Ms. Fagin) created an environment of disrespect and made it difficult to build an effective team
environment – How? Because this is on the **05/10 /2022** call, what is being described by my
peers was also fabricated.

If I'm being quiet on a call, my Caucasian cohort, including Ms. Fagin, states and assumes I'm
disengaged. If I speak, asking clarifying questions, it is described as being offensive,
inappropriate, and unprofessional. However, D. Siebenhausen is the same Associate Director
who texts C. Bower on **05/10/2022 asking "why she is siding with Kisha and trying to keep the
peace. Where Bowers replied right is right, and wrong is wrong."** C. Bower later came to me to
confirm that she was still willing to step forward and tell the truth after speaking with her
husband, Mark, who also approved of her doing the right thing.
**Cynthia Bowers-              can verify the information and record** Bowers willing to Tell
the Truth: "Not a Team Player incident" 00:45-1:00. Double-click the link to listen to the
recording, which contains no PHI.

**In response to Banner - Exhibit 7 - Listen to recording 05/10/22, and what's being described is
different from what was stated. It's based on fabrication and their assumption/ perception.**

Last, here is the 04-06-22 HR-Call Jo-Marie-Fagin-Gleason-Peters. Jo-Marie is fully aware of the
hostile work environment I am enduring, but to begin the call and state, "Kisha, you will
continue to report to Ms. Fagin, and that is not going to change; provide me with full

clarification that they support the hostile work environment, the daily bullying and berating, and intentional discrimination I am subjected to each day reporting to Ms. Fagin. I was then accused of yelling on the call by **Ms. Jo-Marie at 03:04**; she stated that she could not hear me. I then increase the volume. Then, at **9:06, Ms. Jo-Marie** accused me of raising my voice because she felt like my voice was being elevated. Next, Jo-Marie statement began (32:32 - 45:08 to where she is asking Ms. Fagin can she make an adjustment in her taking a roll call and Ms. Fagin respond by stating that is not a fair request that the way she leads. Lastly, she continue the same behavior because she did not make any adjustments from this encounter.

This call resulted in no resolutions, but I was the only one required to make adjustments. In addition to being accused of yelling by Jo-Marie, Ms. Fagin denied embarrassing me in the presence of my peers with the statement, "Kisha is not a Team Player. I said Wow, and Ms. Fagin replied Wow - What? Wow - What? 27:31 - 32:31.

**My Religious Practices & Beliefs.**

Ms. Fagin was fully aware of my religious practices, my learning disability of repeating myself, and how my team acknowledged and addressed Ms. Peters or Ms. P. before she became my leader. Ms. Fagin has known this information since **08/29/2016**, which was discussed during my first leadership meeting with the organization.

Next, Ms. Pat Olsen formally complained to Renee B. because she assumed I was talking down to the team by constantly repeating myself to ensure the team understood the topic/s. Later, Renee B. advised Ms. Olsen of my learning disability, and she fully understood the reason for my constant repetitiveness and that I was not talking down to her or any of the plum B members.

This topic was also discussed during another Department Wednesday **leadership meeting** to ensure we, as leaders, understood that there are different learning styles and that we should be open to others learning abilities and disabilities. I shared during that call that I have a learning disability; therefore, if I repeat what you are saying, it is just me hearing myself and understanding what is being asked of me.

To further clarify my point, we previously completed a quarterly department newsletter. Each leader was assigned a month or quarter to collect this information for the entire department to share during the Town Hall meeting. This meeting consists of all coders and leaders, and most of the time, we have to complete this meeting in two or three settings.  Ms. Fagin is amongst

the leaders who completed this task, and she never published or observed this information about me in the past, as the department still celebrates these items today.

Ms. Fagin's actions were intentional to wish me a happy birthday for malice and degrading ways to continue targeting, marginalizing, and disenfranchising me, using this as a tool to berate me in front of the entire Acute Care Coding department. Every manager has full knowledge of my beliefs and learning disabilities. **Cynthia Bowers-** ▆▆▆▆▆ **can verify the information.**

I was then placed on a written corrective action based on the MAY 10, 2022 RECORDING. At **1:14:56**, you can hear Ms. Carter again address Ms. Fagin as Tab. **"Yeah, that's the one, Tab."** Jo-Marie Gerber indeed received fabricated information, which she chose to uphold even after she received conflicting information that did not support **Sherrie Carter and D. Siebenhausen's accusation** when she interviewed **C. Bowers.C. Bowers** also met with department director Susie Gleason and stated that **"Yes, Tabbi is calling on Kisha more than the other leaders."** However, Jo-Marie Gerber intentionally approved the escalation as a written corrective action**, knowing the accusation was untrue**.

Patrice Olsen has been known to have behavior issues since **08/2016**, when I was hired. I treated Ms. Olsen as I treated the rest of the team. Still, because of the intentional malice of racial discrimination, I am asking Banner Health to supply a specific event, time, and place where this supposed accusation happened, or we will continuously hear fictitious allegations without actuality stated against me from Banner Health. **(Exhibit B- Copy of DVD on P . Olsen)**

**Disengagement Concerning the Apprentice Program**

Banner Health is claiming disengagement, but I am being forced into a conversation for the continuous attacks of hostile work environment, targeting, and intentional racial discrimination. I was working in an enslavement camp directed by the **Ku Klux Klan (K.K.K.)** daily. Listen to the 04-22-22 Levy Way recording**;** Ms. Fagin shows no empathy, and no resolution was provided. However, at the end of the call, she stated, **"Are You Done?"** Still, I follow the same rules as my **WHITE** peers, but I am still being reprimanded because I am **BLACK**. I was advised to make a hard stop on any meeting I'm covering, including my 1:1. Still, during an already scheduled Plum Leader Meeting, **D. Siebenhausen was approved to finish her prescheduled 1:1 without making a hard stop for** any meeting she covered, including her 1:1.  You can hear Sherrie Carter stating, **"D. Siebenhausen is going to be late; she had to complete her 1:1's wait what happens to the hard stop.** I was given a different set of rules to follow, and this is a pure example of white privilege, including intentional racial discrimination towards me.

**Environmental Scan and Written Corrective Action**

Ms. Gerber met with my team; however, what she claims to be referencing in her questions are inaccurate. Please get in touch with the members below who were amongst the Plum B team members interviewed by Ms. Gerber. Those members will provide you with **factual, unbiased information.**

- Carol Raspanti – ███████
- Rebecca Blaine – ███████
- Kanisha Crawford - ███████
- Daria Morris - ███████

To gather insight into the written corrective action, please listen to the recording of Written C with Tabbi, Susie, and Me. She referenced the calls from 06-15-22 D. Siebenhausen Unprofessional Attack on Me; this is the call in which D. Siebenhausen stated I attacked her at 23:20 – 26:35. You can hear the tone of her voice and the level of disgust, but this is the same call H.R. Jo Marie Gerber stated and confirmed I was rude in spite receiving a different statement from Cynthia Bowers who was also present during that meeting. This is the same call you will hear. Renee B. acknowledged that the process in the new system isn't different from the old system at 19:45.

However, when I communicating with my peers, which again is deemed offensive, inappropriate, and unprofessional, but D. Siebenhausen's tone is appropriate. Still, the new leaders (D. Siebenhausen and S. Carter) and Sr. Leader, Ms. Fagin, were interested in something other than what was previously done, which is the same process we used. I continued to be subjected to the unwanted hostile work environment daily from my leader and peers. Cynthia Bowers-███████ can verify the information.

06-22-22 Being Attacked by Ms. Fagin 10:59 – 16:15

- Ms. Fagin assumed again – that I did something wrong when I completed the task correctly.
- She sent rude, accusatory emails, never confirmed and verified, but I was guilty of doing the process incorrectly.
- Lastly, Ms. Fagin found that C. Carter and D. Siebenhausen did not follow the process, and she did not treat them as harshly, rude, and unprofessional as she did me.

08-16-22 Being Attacked by both D. Siebenhausen and S. Carter for not following the Current Process

- D. Siebenhausen did not update the spreadsheet as directed by Ms. Fagin 0:13 - 0:59

- D. Siebenhausen took her guidance from the calendar alert versus the meeting we had on **08/15/22** which was the day before.
- D. Siebenhausen did not understand the processes, and the process changed from **1:00 - 3:15**
- D. Siebenhausen cut me off during the call, but again, she did not understand the process but her behavior is deem appropriate  **3:57 - 4:10**
- S. Carter felt I was frustrated and providing negative energy on the call when asking clarifying questions same as all cohorts **06:30 - 8:40**
- I asked Ms. Fagin to speak with her offline, and she declined **8:40 - 11:15**, but she met with D. Siebenhausen and S. Carter later the same day.

**06/23/2022 Written Corrective Action**
- Sherrie Carter and D. Siebenhausen white Cohorts changed my work **18:57 – 20:16**
- Ms. Fagin interrupted the conversation at **20:16** to not discuss / no resolution.
- Lastly, Ms. Fagin found that C. Carter and D. Siebenhausen did not follow the process or treat them with duplicate rude, accusatory emails as she treated me.
- Being chastised by the department director, Susie Gleason,
  - Excuse Me, Excuse Me, What did you call me **"Ms. Susie"?** I prefer to be called Susie than what I prefer to be called. **24:14 – 31:02**
- Susie Gleason's antagonistic statement, **"I'm sure you recorded it."**
- They were accused of disrupting business with no facts and all lies, assumptions, and perceptions.
- **WHAT DID I DO?**

I maintained that I never recorded a conversation that included PHI. The recordings were not shared with Banner Health because of the intentional racial discrimination that I have endured at the hands of several of my coworkers **(Sherrie Carter and D. Siebenhausen, white Americans)**, human resources **(Matthew Small and Jo-Marie Gerber)**, the Acute Care Coding Sr. Leadership team **(Tabbitha Fagin, Renee Blinkenstaff, Linda Glillam),** and Acute Care Coding Director **(Susanne Gleason)** and outside department Sr. Leadership **(Jamie W.)**.

Banner Health stated the call; I allowed Mr. Small to hear the conflict communication call. The call is listed below for verification purposes. This is also the call where Mr. Small stated he hear PHI when no PHI was discussed. Still, please ask Banner Health to provide the patient's name because the statement supplied by Mr. Small is supposed to be factual, and if this is so, he would not mind volunteering for a lie detective test. Banner Health is going to also supply the official report to support their claim. 07-12-22 Conflict Communication

All Banner Health statements are perceived or assumed. Complaints come from known coders with behavioral issues, as discussed during the recording, especially Ms. Pat. I followed the chain of command, and the collusion involved malice with intentional racial discrimination, bullying, berating, marginalizing, and disenfranchising the only Black African-American leader with a tenure of over five years of service with Banner Health. Based on all the lies and fictitious allegations, sharing the recording with an outside 3rd party, such as the **EEOC**, would be best.

**Investigation and Termination for Violation of Banner's HIPAA Policy**

I contacted Mr. Small as the final hope of being treated as my white cohorts with similar qualifications who have not submitted a discrimination complaint have continued to be granted to work in a free of intentional racial discrimination, with no humiliation, and a hostile free work environment. I spoke to Mr. Small concerning the communication dispute between Ms. Fagin and me on **07-12-22 Conflict Communication**, which is the same call you can hear **Sherrie Carter addressed Ms. Fagin as (Tab) 00:00 - 0:14.** Still, Ms. Carter stated it was offensive for me to address Renee B. as **"Boss Lady,"** and her communication was deemed appropriate by H.R. Jo-Marie Gerber, who adversely approved written corrective action on me for doing the same thing.

 I informed Mr. Small of the Text message communication between Ms. Fagin and me on May 06, 2022, at 12:38 p.m., where Ms. Faging has yet to respond to my text message as of today **( Exhibit -A)**. I stated I was afraid she would say I did not follow the guidance as she did, referencing the downtime procedure policy where Ms. Fagin **assumed/presumed** that everyone knew of certain elements not written on the downtime procedure process. I follow the process as written, the same as my white cohorts. However, I am accused of not following Ms. Fagin's directive, creating a hostile work environment, and intentional discrimination. Still, continue to tell me **"Like She Said"** what my previous leader (Renee B) stated versus holding me accountable for information that is not written.
 **07-26-22  DT Procedure Meeting 13:45 – 28:07.**

I offered to show Ms. Small the text message screen print  **( Exhibit -A)** and allowed him to hear the **July 12, 2022**, recording, which contained no PHI, which he is assuming**.** This is the same call Mr. Small stated in his sworn statement that the **07-12-22 Conflict Communication** call included PHI. Please double click the link to listen to the recording because, as I continued to communicate, I never recorded a conversation that had patient health information, but this is overwhelming proof that if I shared the calls with Banner Health, the outcome would be no different because I also proved the egregious allegations made against me by D. Lukins was also more fabrication.

Banner Health has provided no facts but more fictitious allegations. Since Ms. Small has stated that he heard this information, please request the information below and submit voluntarily to a lie detector test. On the date, I was to return to work on 11-10-2022 PHI Mr. Small Probeing Call. He states that the follow-up on the investigation of the recording I have that they BELIVED that contained PHI. I asked for a specific date and time but Ms. Small or S. Gleason were unable to provide the date and time at 00:20 - 1:00 of what they believed but remember the 07-12-22 Conflict Communication call is what was used to terminate my employment.

I asked Ms. Small to provide a specific date and time for the information he referenced. Still, he was unable to give. Therefore, why was this information ( PHI ) not offered if I was given a chance to cooperate with their investigation? However, this is another fishing expedition, 02:15 - 03:05, based on fictional information that shows the lies, the heinous acts of intentional racism, targeting, discrimination, retaliation, and wrongful termination.

Yes, I was advised by my physician to take FMLA on my last day, 08/18/2022, based on my mental health status. Yes, I met with Ms. Jo-Marie, but it was not about allowing me to sign an attestation and promise to delete all PHI. In this Meeting, "07-25-22 PHI Meeting Jo-Marie," she wanted to ask more CLARIFYING questions about my conversation with Mr. Small. The meeting started at 7:08 when she asked if I recorded every team meeting. I was forced into the conversation as I stated I was uncomfortable. Still, I advised that I never recorded any conversation that included PHI on the call 11:30.48 - 14:25. Ms. Gerber said, "She was just asking CLARIFYING questions" again 14:25 - 14:33.14. I was subjected to constant harassment and allegations without factual information on any claim, but each was based on what they believed, assumed, perceived, and thought. I was so stressed on 08/17-18/2022 that under physician order, I was advised to log off effective immediately due to the decline of my mental health. I declined Ms. Gerber's meeting; therefore, her planned offer to me to sign an Attestation of Destruction/Deletion (copy attached as Exhibit 16) confirming that I had permanently deleted patient information from my personal cell phone and the cloud.

I was never presented with a specific date and time of the alleged PHI I have SUPPOSELY recorded, and I never informed anyone that I recorded any PHI; therefore, the offering me to sign their Attestation of Destruction/Deletion form is an acknowledgment that I indeed recorded PHI when I continuously stated that I NEVER RECORDED ANY PHI. This is the same line of questioning Mr. Small used during the November 10 call when he accused me of bringing up PHI.

I request that Mr. Small voluntarily or involuntarily submit to a LIE dictator test to prove his allegations are true. Next, Banner Health must provide a copy of the violation that must be

reported via the **Origami reporting portal because Mr. Smalls on record stated he can identify on the call he heard patient health information.** Banner Health policy and procedure stated on January 25, 2022, **O.C.R. Voluntary Settlement Corrective Action Plan (C.A.P.)** updated. Suppose an employee is found to have been involved in a data breach (Violating HIPAA Confidentiality). The investigation should follow the **Helpful Hints for Investigating a Privacy Incident and the Common Preventable HIPAA Violations, including the violations categories 1-3.**

This new policy was implemented at Banner Heath because the organization entered a voluntary settlement agreement with the **Department of Health and Human Services Office for Civil Rights (O.C.R.).** The first step in the C.A.P. is to provide all workforce with information and expectations on reporting potential **HIPAA Confidentiality policy-related violations.** Alleged HIPAA Privacy violation is critical and needs to be investigated immediately. Banner Health must report the incident to **O.C.R. under the new guidelines if a confirmed violation is identified.** The employee will receive an email notifying them of their involvement in a HIPAA Privacy violation investigation, which will determine what action needs to be taken, including re-education up to termination of employment. Next, if re-education is required, the employee must sign an **affirm attestation** that the employee agreed to abide by the policy and procedure of Banner Health. Suppose the investigation determines corrective action is required. In that case, Banner Health must follow the **Privacy and Information Security violation Sanction Grid, the HIPAA Sanction policy, and the B.H. corrective Action policy, which can all be located on the HIPAA intranet site.**

<u>**Investigation Questions**</u>

What **SPECIFIC** patient information was involved, **(Mr. Small under oath stated the call on 07-12-22 is where her heard the SPECIFIC patient information.) The Breach of PHI.**
It is essential to know what identifiers were accessed or disclosed, such as patient name, D.O.B., diagnosis, etc.

- Date of the Privacy Breach Violation,
- Who was involved,
- How the breach occurred,
- When did the event occur,
- Where did the event happen,
- Who currently had the information?

Because I was unable to trust anyone who was a part of human resources and the Banner Acute Care Leadership team, I was afraid. I have been mistreated because I was unable to trust that Banner Health would treat me the same way they treat my cohorts of caucasian ethnic backgrounds. I have been humiliated, and action taken against me without even verifying if the

accusation was true. I was deemed guilty of all allegations, identified as not a team player, and embarrassed in front of my peers and team members who reported to me and continued racial and mental abuse daily at the action of my WHITE peers. My termination was an actual cover-up and collusion of how Banner Health treats African Americans who work for this organization, **WHICH IS ENSLAVEMENT UNDER JIM CROW LAW**.

**RESPONSE TO CHARGE**
1. **No Hiring of Apprentices ( Retaliation)**
    a. Based on a fictional story created by Donita Lukins,
    b. Direct Report of Linda Gillam
        i. Who never interviewed Ms. Myrick?
        ii. Who was the only other person on the call
    c. Forced education on a procedure that was not in place
    d. Assume I did not know the process and deemed me guilty based on the imaginary story created by Donita Lukins
        i. Who was recently promoted to Associate Director of Team Plum B
    e. Based on a procedure that was not in place
    f. A newly updated procedure was added to the apprentice procedural, including an **OPTIONAL** meeting for the leaders.

2. **Alleged Mistreatment**
    a. All allegations are from known employees with behavior issues or those members of the leadership team and human resources conspiracy to continuously mistreat me.
    b. If Banner Health finds its information accurate, I suggest all parties submit to a L.I.E. detector test.

3. **Disciplinary Action: Listen to recordings.**
    a. Ms. Gleason interviewed Ms. Myrick on 04/05, who informed her that what I was accused of did not happen, BUT I was labeled **PUBLIC ENEMY NUMBER 1**.
    b. I was subject to intentional discrimination, malice, and wrongful termination because I made a complaint against Ms. Fagin.

**Termination**
Based on browbeaten fictitious allegations without actuality.

**CONCLUSION**
Since experiencing racial discrimination, I had to discontinue medical treatment for my mental health over the last year. My medication has increased three times since beginning treatment

but I am currently unable to purchase and medication due to the financial strain from the intentainal racial discrimniation, reraliation, wrongful termination I endured at the hand of members of Banner Health up to their Human Resouces manager.

I had never been diagnosed with depression, anxiety, and panic attacks before **08/08/2021**. I also attend therapy as a way to talk to someone who can provide me with guidance on the road to recovery. Since **08/08/2021**, when Ms. Fagin became my leader, I've encountered microaggressions that resulted in a hostile work environment, retaliation, racial discrimination, berating, belittling, and pure disregard for my religious practices. I insist that I be addressed and given the same respect as my white cohort. However, it was unheard of to address a BLACK woman as Ms. Peters or Ms. P., which became a big issue **ONLY** when Ms. Fagin became my leader but never a problem from **08/29/2016-08/07/2021**. Mental Health is an essential part of my life now, and getting healthy is my overall and primary concern. I do not know how my mental health will be 100 years from today, but I will continue to seek treatment once I am able to iancially cover the cost.

Thank you.

Sincerely,
Kisha M. Peters

# EXHIBIT E

## GENERAL ORDER 2025-04 DISCLOSURE (AI USE COMPLIANCE STATEMENT)

Pursuant to **General Order 2025-04**, Plaintiff discloses that portions of this filing were drafted with the assistance of a generative AI tool (ChatGPT). Plaintiff affirms that the filing has been **fully reviewed, edited, and approved** by the undersigned and that Plaintiff **accepts full responsibility** for its content, accuracy, and citations.