UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KISHA PETERS, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | Civil Action No.: 4:24-cv-00772 |
| | § | |
| BANNER HEALTH d/b/a BHT | § | |
| BANNER HEALTH OF TEXAS | § | |
| | § | |
| **Defendant.** | § | |

### DEFENDANT'S REPLY IN SUPPORT OF RULE 35 MOTION

Plaintiff's response to Defendant Banner Health's Motion for Rule 35 Examination ("Motion") miscites caselaw, misstates the legal standard appliable to Rule 35 motions, and fails to demonstrate that her mental health is not in controversy. In fact, Plaintiff's response (ECF 256) offers further confirmation that her mental health is in controversy, and that good cause exists for a Rule 35 examination (or "IME").

## I.    Plaintiff Miscites Caselaw and Misstates the Rule 35 Standard

Unfortunately, Banner must once again advise the Court that Plaintiff's cited authorities do not stand for the propositions she asserts. For example, Plaintiff writes that "Courts apply [the Rule 35] standard narrowly. *See Lahr v. Fulbright & Jaworski LLP*, 164 F.R.D. 204, 208 (N.D. Tex. 1996)." [ECF 256 ("Resp.") at 2] *Lahr* actually states the opposite, citing approvingly to case law holding that "Rule 35(a) should be interpreted liberally in favor of discovery" and rejecting the plaintiff's argument to the contrary. *Lahr*, 164 F.R.D. at 207 n.1. Moreover, Plaintiff is wrong on the law, as "district courts in the Fifth Circuit have uniformly held that Rule 35(a) should be

1

construed *__liberally__* in favor of granting discovery." *Griffith v. Santillan*, 2019 WL 5396750, at *1 (S.D. Tex. 2019) (emphasis added).

Plaintiff also avers that courts apply a five-factor test when determining whether Rule 35 relief is appropriate, citing *Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D. Cal. 1995) in support. [Resp. 2-3] But Plaintiff completely misstates the five *Turner* factors, selectively omitting key factors directly relevant to her situation (*i.e.*, "an allegation of specific mental or psychiatric injury or disorder" and "claim of unusually severe emotional distress"), and conjuring her own factor found nowhere in *Turner* ("whether the information is unavailable through existing records or testimony"). *Compare Turner*, 161 F.R.D. at 95 with ECF 256 at 2-3.

What's more, Plaintiff's fabricated factor is in direct contravention of *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 394 (S.D. Tex. 2013), which cites *Turner* and applies its factors in this district. There, the Court opined: "While the probability of obtaining the information through other sources is pertinent to the 'good cause' inquiry, a plaintiff may not avoid a Rule 35 examination simply on the grounds that other sources of information, such as medical reports and depositions of plaintiff's treating physicians, are available." *Ornelas*, 292 F.R.D. at 391-92; *see also Griffith*, 2019 WL 5396750, at *2 ("It seems incredibly obvious that [a] review of cold medical records is [simply] no substitute for an in-person examination by a doctor.").

Plaintiff's misrepresentations do not stop there. Next, Plaintiff's Response states "As emphasized in *Roberson v. Bair*, 242 F.R.D. 130, 137 (D.D.C. 2007), and *Boadi v. Center for Human Dev.*, 239 F. Supp. 3d 333, 340 (D. Mass. 2017), when emotional distress is typical of a discrimination case and adequately documented, Rule 35 does not apply." [Resp. at 3-4] Not so. *Roberson* says nothing about "typical" emotional distress in a discrimination case; the plaintiff did not even contest that her mental condition was in controversy. Roberson, 242 F.R.D. at 137.

2

Moreover, the *Roberson* court in fact <u>applied</u> Rule 35's standards and ordered the plaintiff to submit to an IME, noting that examination was justified because "[s]he unquestionably claims that she is suffering from two identifiable forms of mental illness or disorder and that those conditions were caused by Defendant." *Id*. at 137-38. Worse still, *Boadi* has nothing do with Rule 35 at all; it is a summary judgment order that discusses the Family and Medical Leave Act and American with Disabilities Act at length. *Boadi v. Ctr. for Human Dev., Inc.*, 239 F. Supp. 3d 333, 343 (D. Mass. 2017). In short, Plaintiff has again flouted the need for accurate legal authority and this Court's prior orders reiterating same.

## II.     <u>Plaintiff's Mental Health is at Issue and Good Cause Exists for an IME</u>

Although Plaintiff denies that her mental health is in controversy, her own Response – and many other documents she has authored or produced – confirm that this argument is baseless. It is undisputed that Plaintiff alleges that she has suffered severe emotional distress and ongoing mental health conditions, and that she seeks hundreds of millions of dollars for emotional distress damages. This is sufficient to satisfy the "in controversy" requirement. *See generally* Banner's Motion, ECF 253, at 2-5.

In an effort to avoid that result, Plaintiff effectively takes the position that the existence and causation of her $300,000,000 in emotional damages are both absolute, as if they have already been established by a factfinder or by the Court, such that there is no "controversy." Of course, this is not the case, and Plaintiff's astronomical damages figure makes clear that an IME is justified so Banner may fairly assess those damages and be placed on equal footing with the Plaintiff. *Pierce v. Aveanna Healthcare, LLC*, 2023 WL 2764660, at *4 (W.D. Tex. 2023) ("[O]ne of the purposes of Rule 35 is to preserve the equal footing of the parties.").

3

While "garden variety" emotional distress is normally not subject to Rule 35 examination, it is clear that Plaintiff's alleged mental harm far exceeds that description. The Court need look no further than Plaintiff's Response. For instance, Plaintiff states (at 9) that her "sworn affidavit accurately reflects Plaintiff's emotional distress based on contemporaneous medical treatment and provider documentation" and that "[t]he conditions described (e.g., major depressive disorder, anxiety, panic attacks) are **based on DSM-5 diagnoses made by treating professionals** (e.g., PMHNP-BC Solomon)." [ECF 256 at 9 (emphasis original)] Standing alone, Plaintiff's assertion debunks any argument that she is merely alleging "garden variety" emotional distress. *See Quigley v. T-Mobile USA, Inc.*, 2022 WL 3013196, at *2 (C.D. Cal. 2022) (noting that garden variety emotion distress is "simple" or "usual," while "[e]motional distress that is not garden variety may be complex, such as that resulting in a specific psychiatric disorder.").

The Response's exhibits further confirm that Plaintiff's mental health is in controversy:

- **Exhibit A**: "Since my wrongful termination, I have suffered from: • Major Depressive Disorder • Severe Anxiety Disorder • Panic Attacks • Suicidal Ideation (diagnosed by medical professionals following my termination)." [ECF 256-1 at 3]

- **Exhibit A**: "The severe psychological and financial harm I continue to endure is not hypothetical—it is documented, life-threatening, and ongoing." [ECF 256-1 at 5]

- **Exhibit B**: Plaintiff seeks $300,000,000 in emotional distress damages and $320,000 in medical bills. [ECF 256-1 at 14-15]

- **Exhibit D**: Alleging that Banner's actions "caused documented psychological trauma, panic-induced medical emergencies, and lasting neurological and emotional injury," and again that her damages claim is currently $300 million. [ECF 256-1 at 36]

In sum, Plaintiff has unquestionably placed her mental health at issue, and her Response only reaffirms that fact. As such, there is good cause to order the IME. *Ornelas*, 292 F.R.D. at 392 ("A plaintiff in a negligence action who asserts mental or physical injury places that mental or

physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury.") (citing *Schlagenhauf v. Holder,* 379 U.S. 104, 119 (1964)); *Shadix–Marasco v. Austin Reg'l Clinic P.A.*, 2011 WL 2011483, at *3 (W.D. Tex. 2011) (applying the same standard in discrimination context, noting that "when . . . mental injuries will be an important component of [the plaintiff's] damages, good cause exists to permit defendant to select its own expert in that field to examine [the plaintiff].").

## III.    No Binding Authority Subjects IMEs to Expert Disclosure Deadlines; Even if it Did, Good Cause Exists for an Extension

Finally, Plaintiff argues that Banner is not entitled to an IME because it "failed to serve a timely and compliant Rule 26(a)(3) 'Designation of Expert and Fact Witnesses,'" which she claims was due on August 1. [Resp. at 4] As an initial matter, Plaintiff is incorrect that August 1, 2025 was the deadline for Banner (or Plaintiff, for that matter) to disclose fact witnesses. Rule 26(a)(3) provides that such disclosures are due 30 days before trial unless the Court sets a different deadline; no such earlier or different deadline has been set in this case. August 1 was the deadline for "identification of responsive experts and production of experts' reports in the form required by Rule 26(a)(2)(B)." [ECF 84]

Plaintiff acknowledges, however, that Banner disclosed Dr. Erin Nelson on July 31, 2025—***prior to*** the August 1 expert disclosure deadline. Dr. Nelson, of course, cannot provide a report in this matter until after the Court has granted Banner's Rule 35 Motion (which was filed prior to August 1, 2025) and after conducting her examination of Plaintiff. Moreover, the Rule 35(b)(2) requirements for what must be included in an examiner's report are substantially different from (and less extensive than) the requirements for an expert report laid out in Rule 26(a)(2)(B).

Plaintiff's argument is premised entirely on the assertion that Rule 26's expert disclosure deadlines and requirements apply to IMEs conducted under Rule 35.[1] For reasons explained below, that is an open question that does not need to be resolved today.

Among District Courts, which are the courts initially faced with considering the issue, there is a split of authority on whether IMEs under Rule 35 are subject to expert disclosure deadlines. *Pierce*, 2023 WL 2764660 at *2 (recognizing the split); *Quigley*, 2022 WL 3013196 at *5 (same). The Fifth Circuit has not weighed in on the issue. *Pierce*, 2023 WL 2764660 at *2.

The majority approach has found that Rule 35 operates independently of expert disclosure deadlines under Rule 26. *See, e.g.*, *Bush v. Pioneer Human Services*, 2010 WL 324432, at *5 (W.D. Wash. 2010) ("[T]his Court takes the position that the deadline set in the scheduling order for expert reports under Rule 26(a)(2) does not apply to the issuance of a Rule 35 report."); *Waggoner v. Ohio Cent. R.R., Inc.*, 242 F.R.D. 413, 414 (S.D. Ohio 2007) ("[T]he Court concludes that the deadline which it set in this case for the disclosure of expert reports under Rule 26(a)(2) does not apply to the issuance of a Rule 35 report."); *Mailhoit v. Home Depot U.S.A., Inc.*, 2013 WL 12122580, at *6 (C.D. Cal. 2013) ("To impose an absolute rule requiring Rule 35 examinations to take place prior to the disclosure of opening expert reports would encourage systematic requests for such examinations where they may not be necessary."). The minority approach holds the opposite. *See Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 418 (S.D. Tex. 2012).

Although Banner believes that the majority has the better side of the argument (for the reasons set forth in *Bush* and *Waggoner*), the Court can avoid needlessly wading into the fray.

---

[1] Plaintiff has subsequently filed *Plaintiff's Motion for Leave to File Motion to Exclude Untimely Expert Testimony and Witness Testimony Not Properly Disclosed*. [ECF 259] The Court has ordered Banner to respond to Plaintiff's motion by August 15, 2025. [ECF 261]. Although Banner's analysis here, including the implementation of Banner's suggested relief and extension of the expert disclosure deadline, addresses the issues raised in Plaintiff's Motion to Exclude, Banner will nevertheless submit a separate response by the deadline set by the Court.

Critical for present purposes, courts in the minority have acknowledged that because the issue is unclear from the face of the Federal Rules of Civil Procedure and remains an unsettled issue of law, so long as good cause for the IME exists, an extension of case deadlines is warranted to allow for the examination. *Diaz,* 279 F.R.D. at 422 n.3; *Pierce*, 2023 WL 2764660, at *3 ("A Rule 35 examination that occurs after the expert report deadline may be warranted when there has been a 'good cause' showing for the examination."). Indeed*,* the *Diaz* court took this exact approach, citing the caselaw split itself as providing good cause for the extension. *Diaz*, 279 F.R.D. at 422 n.4 ("The Court notes that the uncertainty in the case law on the proper deadlines for requesting and conducting a Rule 35 examination and issuing the report further supports the Court's finding of 'good cause' to extend the deadlines for both parties.").

Another court discussing this precise issue stated that parties should not be punished for the case law split:

> Courts on both sides of this issue are struggling to look for direction in the Federal Rules of Civil Procedure which is not there. If the courts cannot find clear direction in the Rules, it is unfair to expect practicing attorneys to anticipate, at their client's peril, how the court will interpret the Rules. The management of the pretrial process is committed to the discretion of the District Court. It is common practice in this Court to adjust the schedule as reasonably necessary to allow the parties to prepare their case for trial. The schedule is not the goal, but rather the tool to ensure a fair opportunity for the parties to present their claims and defenses to the court and/or jury.

*Seyfang v. DreamHome Restoration, LLC*, 2018 WL 1701970, at *3 (D. Wyo. 2018) (internal citation omitted).

Here, even if the expert disclosure deadline applies to a Rule 35 examination and report, good cause exists to extend the deadline to allow for the IME. *See, e.g.*, *Diaz*, 279 F.R.D. at 422; *Pierce*, 2023 WL 2764660, at *3. The Fifth Circuit applies a four-part test to determine if good cause exists: (1) the explanation for the failure to adhere to the deadline; (2) the importance of the proposed modification to the scheduling order; (3) potential prejudice in allowing the testimony

7

or the supplement; and (4) the availability of a continuance to cure such prejudice. *Diaz,* 279 F.R.D. at 422.

As noted above, the *Diaz* court recognized that the case law split on the application of Rule 26 to Rule 35 examinations itself provided good cause for an extension, but it also further justified its extension based on the importance of the IME to damages and because "any potential prejudice in allowing the testimony could be cured by a Court-continuance." *Id.* The *Pierce* court acknowledged the extension in *Diaz* and granted a similar extension so an IME could be conducted. *Pierce*, 2023 WL 2764660, at *3. Here, the same factors apply.

Banner disclosed Dr. Nelson and filed its Motion well before the deadline for completing fact discovery (which is appropriate, because Rule 35 is a discovery tool). Banner also disclosed Dr. Nelson and filed its Motion before the expert disclosure deadline. The proposed examination is extremely important for analyzing the Plaintiff's damages and Plaintiff will not be prejudiced— if the examination takes place on one of the four dates proposed by Banner, Plaintiff will have adequate time to review Dr. Nelson's report, and if she wishes, depose Dr. Nelson before the discovery deadline of October 10, 2025.

Even if the October 10 deadline needs to be briefly extended to accommodate a deposition of Dr. Nelson, there is still ample time for that to occur without any shifts to the dispositive motion deadline (November 12, 2025) or the subsequent deadlines leading up to the February 13, 2026 docket call. And Dr. Nelson's examination, report, and potential deposition testimony would only be relevant for trial purposes in any event; her findings regarding Plaintiff's mental health condition and alleged emotional distress damages have no bearing on either Plaintiff's pending, fully-briefed summary judgment motion or Banner's anticipated summary judgment motion (which will only address liability issues and the merits of Plaintiff's claims as a matter of law).

8

This approach is consistent with the Court's prior rulings on the case schedule. On July 18, 2025, Banner filed its Motion for Extension of Discovery and Pre-Trial Motion Deadlines, in which it stated that "Banner also continues to believe a Rule 35 Examination is warranted in this case and anticipates filing a motion requesting same in short order. Full briefing on the issue seems likely as Banner expects Plaintiff to oppose that request. By granting the modest extension requested herein, there will be ample time for the parties to brief the issue, the Court to issue an order, and (assuming the Rule 35 Motion is granted), for the examination to be conducted before the discovery deadline." [ECF 240 at 3, ¶ 6] The Court acknowledged this in its Order, reciting it as part of finding that good cause existed for extending the discovery deadline to October 10, 2025. [ECF 242][2]

Beyond the split of authority, recent new disclosures by Plaintiff further support good cause for both Banner's requested examination and for extension of the expert disclosure deadline. On June 20, 2025, Plaintiff served her Ninth Supplemental Disclosure Statement in which she identified, for the first time, Clotie Wayland, LCSW, and said Ms. Wayland would "testify regarding the Plaintiff's long-term mental health impairments, including the impact on daily functioning, crisis counseling provided in response to suicidal ideation, and the diagnosis and treatment of trauma-related PTSD." [ECF 253, Ex. B] One week later, on June 27, 2025, Plaintiff served a 63-page *Designation of Expert and Fact Witnesses* document in which she further revealed that Ms. Wayland had provided mental health treatment to her (at unspecified times) and

---

[2] This decision is consistent with other courts' conclusions that Rule 35 exams can be scheduled late in the discovery period as long as the examined party has adequate opportunity to review the resulting report. *Eckman v. Univ. of Rhode Island*, 160 F.R.D. 431, 432 (D.R.I. 1995) (finding a request for a mental health examination to be timely because it was filed within the time permitted for discovery)*; Kalkey v. Euromodas, Inc.*, 2025 WL 2085673, at *1 (D.P.R. 2025) (noting that IME's are normally conducted late in the discovery process, but requiring the IME to be conducted before the close of discovery so the plaintiff can review the report and depose the examiner (if necessary)); *Bush*, 2010 WL 324432, at *5 (holding that the expert disclosure deadline did not apply to Rule 35 exams but noting that the examination must take place in the discovery period).

would testify as to Plaintiff's need for continued therapy. [ECF 253, Ex. C][3] In that same document, Plaintiff also, for the first time, designated her identified therapists and physicians as "Medical and Psychological Experts (Non-Retained)" and not just "individuals likely to have discoverable information."

For the reasons stated above, good cause exists for extending the expert disclosure deadline to allow for the IME.

## IV.     Plaintiff's Proposed Protective Order Should be Denied

In her Response, Plaintiff asks the Court to issue a protective order that places unreasonable and unnecessary limitations on the IME if it is ordered. Specifically, Plaintiff requests that the Court: (i) forbid Banner from choosing its own examiner and require the Court appoint a "neutral, non-forensic" replacement; (ii) limit the time of testing to a single hour, including intake paperwork; (iii) prohibit use of specific tests or assessments and limit the psychological subjects the examiner may inquire into; (iv) require audio recording by a third party at Banner's expense; and (v) prohibit the examiner from testifying. [Resp. at 6 and Ex. E] Tellingly, Plaintiff cites no legal authority in support of such restrictions. That is likely because caselaw does not support such draconian limitations.

For instance, "[i]n general, courts will appoint the physician of the moving party's choice unless the opposing party raises a valid objection to the physician." *Pierce*, 2023 WL 2764660, at *5; *Griffith*, 2019 WL 5396750, at *2 (same); *Woodard v. Wal-Mart Stores E., LP*, 2010 WL 3455342, at *2 (M.D. Ga. 2010) (same). Fairness requires this result, as a defendant has the same

---

[3] Plaintiff also disclosed that there are "therapy records and crisis intervention notes" from her treatment by Ms. Wayland, but she did not produce those records with her disclosure. Accordingly, Banner issued a document subpoena to Ms. Wayland that was served on July 29, 2025.

right as a plaintiff to select a healthcare provider to testify as to the plaintiff's mental injuries. *Pierce*, 2023 WL 2764660, at *5.

Similarly, Courts have rejected requests to preclude examiners from asking questions about topics that are relevant to causation. *See, e.g.*, *Pierce*, 2023 WL 2764660, at *6 (rejecting a plaintiff's request to preclude the examiner from asking questions regarding the plaintiff's childhood and other personal issues because such topics may be relevant to proximate causation of the mental injuries); *Nazar v. Harbor Freight Tools USA Inc.*, 2020 WL 4730973, at *4 (E.D. Wash. 2020) ("Considering the nature and extent of Plaintiff's alleged injuries, this Court believes it prudent to join others around the country and authorize Defendant's examiners to conduct 'routine procedures' and engage in questioning they consider, in the exercise of their professional judgment, necessary to fairly evaluate Plaintiff's condition."). Here, where Plaintiff alleges that Banner caused all of her extensive mental injuries, such a limitation is unwarranted.

Courts also routinely reject attempts to unduly or arbitrarily limit the length of the examination and have approved a wide variety of durations. *See, e.g.*, *Ornelas*, 292 F.R.D. at 399 (noting that courts have permitted examinations lasting anywhere from three to 14 hours and expressing reluctance to impose three-hour limit requested by plaintiffs, "particularly given the seriousness and extensiveness of the injuries allegedly sustained"); *Quigley,* 2022 WL 3013196 at *6 (approving of examination in employment discrimination case that would last approximately five hours, include "a detailed interview, mental status examination, and appropriate, generally accepted standardized psychological testing and screening cognitive assessment"); *Jackson v. Deen*, 2013 WL 2027398, at *5 (S.D. Ga. 2013) (granting eight-hour mental examination period); *Simonelli v. Univ. of California-Berkeley,* 2007 WL 1655821, at *3 (N.D. Cal. June 4, 2007) (same). As some courts have noted, unnecessarily limiting the duration can create a perverse

incentive for the plaintiff to stall during the appointment. *Nazar*, 2020 WL 4730973, at *4 (citing *Schaeffer v. Sequoyah Trading & Transp.*, 273 F.R.D. 662, 664 (D. Kan. 2011) (noting concern that Plaintiff "may attempt to manipulate the tests by stalling if an arbitrary time limit is established," and ultimately limiting psychological/vocational examination to two days).

Accordingly, Banner requests that Plaintiff's proposed protective order be denied in full, and that the IME be ordered as described in Banner's Motion (pp. 6–7).

## V.    Conclusion

As explained in Banner's Motion and above, the "in controversy" and "good cause" standards are easily satisfied by Plaintiff's allegations and disclosures in this case, warranting approval of Banner's proposed examination. In light of the muddled state of case law regarding the intersection of Rules 26 and 35, and to prevent any inadvertent scheduling problems resulting from Banner's Motion being granted, Banner suggests that the order approving the examination extend the August 1, 2025 expert disclosure deadline to September 30, 2025, and extend the October 10, 2025 discovery deadline to October 30, 2025 for the limited purpose of allowing Plaintiff to depose Dr. Nelson if she so chooses (*i.e.,* all other discovery must still be completed by October 10).

Dated: August 8, 2025                        Respectfully submitted,

By: */s/ Jill J. Chasson*
    Jill J. Chasson (Arizona Bar #019424)
    *Attorney-in-charge, admitted pro hac vice*
    Andrew T. Fox (Arizona Bar #034581)
    *Admitted pro hac vice*
    COPPERSMITH BROCKELMAN PLC
    2800 North Central Avenue, Suite 1900
    Phoenix, Arizona  85004
    Telephone: 602.381.5481
    Fax: 602.224.6020
    jchasson@cblawyers.com
    afox@cblawyers.com

*ATTORNEYS FOR DEFENDANT*
*BANNER HEALTH*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon

all parties in the manner indicated below on August 8, 2025.

Kisha Peters
2927 Westwood Manor Ln.
Houston, Texas 77047
Telephone: 832-782-0199
kipeters1107@yahoo.com

*Plaintiff Pro Se*

○    via Certified Mail, RRR
◉    via U.S. Mail (First Class)
○    via Electronic Mail
○    via Fax
○    via Hand Delivery
○    via Messenger
○    via E-Filing
○    via Federal Express

*/s/ Tina Johannesen*

13